UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHARLETTE MAYFIELD, CLAUDE MILLIEN, and EBONY PORTER, individually and on behalf of all persons similarly situated,<br><br>             Plaintiffs,<br><br><br>       -against-<br><br><br>ASTA FUNDING, INC., ASTA JOHN/JANE DOES 1-20, PALISADES COLLECTION, LLC, GARY STERN, PALISADES COLLECTION JOHN/JANE DOES 1-20, PRESSLER & PRESSLER, LLP, RICHARD A. FRANKLIN, TIN-AN A. WANG, MITCHELL E. ZIPKIN, CRAIG STILLER, and PRESSLER JOHN/JANE DOES 1-20,<br><br>             Defendants. | **14 Civ. 2591 (RPP) (JLC)** |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTIONS TO COMPEL ARBITRATION, STRIKE CLASS ACTION ALLEGATIONS,
DISMISS THE COMPLAINT, AND FOR ADDITIONAL RELIEF**

**NEW YORK LEGAL
ASSISTANCE GROUP**
7 Hanover Square, 18th Floor
New York, NY 10004
(212) 613-5000

**HUGHES HUBBARD & REED LLP**
One Battery Park Plaza
New York, New York 10004
(212) 837-6000

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ....................................................................................................................2

ARGUMENT ........................................................................................................................5

I.      THIS COURT SHOULD DENY DEFENDANTS' MOTIONS TO COMPEL
ARBITRATION AND STRIKE CLASS ALLEGATIONS BECAUSE
DEFENDANTS HAVE NOT SHOWN THAT PLAINTIFFS AGREED TO
ARBITRATE OR WAIVE CLASS ACTION RIGHTS. ...................................................5

      A.      Defendants Bear the Burden of Establishing That Plaintiffs Agreed to
Arbitrate This Dispute or Waive Their Rights to Litigate as a Class. ....................5

      B.      Defendants Have Neither Identified Plaintiffs' Supposed Contracts Nor
Proved Their Contents. .......................................................................................6

      C.      All of the Sample Terms and Conditions Plainly Exclude Plaintiffs'
Collections-Related Claims From Mandatory Arbitration. ...................................13

      D.      Defendants, As Non-Signatories, Cannot Invoke The Arbitration Provision
or Class Action Waiver Against Plaintiffs. ..........................................................15

II.     THIS COURT SHOULD DENY DEFENDANTS' MOTIONS TO DISMISS
PLAINTIFFS' RICO CLAIMS. ...................................................................................16

      A.      Defendants' Acts of Mail and Wire Fraud Constitute RICO Predicate
Acts. ...................................................................................................................16

      B.      Plaintiffs' RICO Allegations Are Pleaded With Particularity. ..............................23

      C.      Plaintiffs Have Pleaded That Defendants Formed An Unlawful Enterprise. ........25

III.    MR. MILLIEN'S AND MS. PORTER'S FDCPA CLAIMS ARE TIMELY. ..................26

IV.    PLAINTIFFS HAVE STATED A CLAIM UNDER GBL § 349 FOR
DECEPTIVE, CONSUMER-ORIENTED MISCONDUCT. ............................................28

V.     THE COURT SHOULD DENY DEFENDANTS' MOTION TO DISMISS THE
INDIVIDUAL DEFENDANTS .......................................................................................30

VI.    PLAINTIFFS HAVE ADEQUATELY PLEADED DAMAGES. ...................................32

CONCLUSION ....................................................................................................................34

# TABLE OF AUTHORITIES

Page(s)

CASES

*Allied Sheet Metal Works, Inc. v. Kerby Saunders, Inc.*, 619 N.Y.S.2d 260
(1st Dep't 1994) ...................................................................................6

*Amalfitano v. Rosenberg*, 12 N.Y.3d 8 (2009) ...........................................34

*Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974)................................26

*Angermeir v. Cohen*, No. 12 Civ. 55, 2014 WL 1613016
(S.D.N.Y. Mar. 27, 2014) ...............................................20, 23, 25, 33

*Azrielli v. Cohen Law Offices*, 21 F.3d 512 (2d Cir. 1994) .........................17

*Bankers Trust Co. v. Rhoades*, 859 F.2d 1096 (2d Cir. 1988)....................17

*Bano v. Union Carbide Corp.*, 273 F.3d 120 (2d Cir. 2001)........................31

*Belsito Commc'ns, Inc. v. Dell, Inc.*, No. 12 Civ. 6255, 2013 WL 4860585
(S.D.N.Y. Sept. 12, 2013)...............................................................12

*Bensadoun v. Jobe–Riat*, 316 F.3d 171 (2d Cir. 2003)................................12

*Berger v. Cantor Fitzgerald Secs.*, 942 F. Supp. 963 (S.D.N.Y. 1996)........12

*Beskow v. Halow*, 228 N.Y.S. 414 (1st Dep't 1928) ....................................31

*Beslity v. Manhattan Honda, a Div. of Dah Chong Hong Trading Corp.*,
467 N.Y.S. 2d 471 (N.Y. Sup. Ct. 1983) .................................................33

*Boyle v U.S.*, 556 U.S. 938 (2009)...............................................................25

*Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008).................17, 19

*Bryant v. Food Lion, Inc.*, 774 F. Supp. 1484 (D.S.C. 1991) ......................11

*Bucy v. AT&T Wireless Servs.*, No. A105910, 2005 Cal. Unpub. LEXIS 4368
(Cal. Ct. App. May 18, 2005) ..................................................................14

*Calibuso v. Bank of Am. Corp.*, 893 F. Supp. 2d 374 (E.D.N.Y. 2012) .......12

*Chandler v. AT&T Wireless Servs., Inc.*, 358 F. Supp. 2d 701 (S.D. Ill. 2005) ...........14

*Chenensky v. N.Y. Life Ins. Co.*, No. 07 Civ. 11504(WHP), 2011 WL 1795305
(S.D.N.Y. Apr. 27, 2011)........................................................................12

iii

*Chevron Corp. v. Dozinger*, 871 F. Supp. 2d 229 (S.D.N.Y. 2012)..............................................20

*Clark v. Conahan*, 737 F. Supp. 2d 239 (M.D. Pa. 2010) .............................................................33

*Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993) .......................................................................32

*Cnty. of Ulster, N.Y. v. Ulloa*, No. 10-CV-467, 2011 WL 777962
    (N.D.N.Y. Mar. 1, 2011)...........................................................................................................33

*Coble v. Cohen & Slamowitz, LLP*, 824 F. Supp. 2d 568 (S.D.N.Y. 2011) ...................................27

*Crandall v. AT&T Mobility, LLC.*, No. 07 Civ. 00750, 2008 U.S. Dist. LEXIS 55280
    (S.D. Ill. July 18, 2007)............................................................................................................14

*CSX Transp., Inc. v. Gilkison*, No. 05 Civ. 202, 2012 WL 1598081
    (N.D.W. Va. May 3, 2012) ........................................................................................................20

*Curley v. Cumberland Farms Dairy, Inc.*, 728 F. Supp. 1123 (D.N.J. 1989)...............................33

*Curtis & Assocs. P.C. v. Law Offices of David M. Busman, Esq.*, 758 F. Supp. 2d 153
    (E.D.N.Y. 2010).................................................................................................................21, 22

*Daddona v. Gaudio*, 156 F. Supp. 2d 153 (D. Conn. 2000) ....................................................21, 22

*DirectTV, Inc. v. Lewis*, No. 03 Civ. 6241, 2005 U.S. Dist LEXIS 8187
    (W.D.N.Y. Apr. 29, 2005) ..................................................................................................21, 22

*Doe v. Selsky*, 948 F. Supp. 2d 306 (W.D.N.Y. 2013).................................................................28

*Dreyfuss v. eTelecare Global Solutions-U.S. Inc.*, No. 08 Civ. 1115, 2008 WL 4974864
    (S.D.N.Y. Nov. 19, 2008) ...........................................................................................................9

*Dreyfuss v. eTelecare Global Solutions-U.S. Inc.*, 349 Fed. App'x 551
    (2d Cir. 2009)...........................................................................................................5, 6, 9, 10, 11

*Fonte v. AT&T Wireless Servs., Inc.*, 903 So.2d 1019 (Fla. Dist. Ct. App. 2004).......................14

*Fritz v. Resurgent Capital Services*, 955 F. Supp. 2d 163 (E.D.N.Y. 2013) ..........................30, 33

*Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y. 2d 330 (1999) ................................................29

*Gaidon v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201 (2001) ................................................29

*Griffin-Amiel v. Frank Terris Orchestras*, 677 N.Y.S.2d 908 (Yonkers City Ct. 1998)..............33

*Hallmark v. Cohen & Slamowitz, LLP*, No. 11 Civ. 842S, 2013 WL 5178128
    (W.D.N.Y. Sept. 16, 2013) ......................................................................................................10

iv

*Heiko Law Offices, P.C. v. AT&T Wireless Servs., Inc.*, 800 N.Y.S.2d 347
(Sup. Ct. N.Y. Feb. 22, 2005) ................................................................................14

*Heintz v. Jenkins*, 514 U.S. 291 (1995).....................................................................27

*Hemmerdinger Corp. v. Ruocco*, 976 F. Supp. 2d 401 (E.D.N.Y. 2013) ...................25

*Hines v. Overstock.com, Inc.*, 380 F. App'x 22 (2d Cir. 2010) .............................5, 8, 11

*Ironforge.com v. Paychex, Inc.*, 747 F. Supp. 2d 384 (W.D.N.Y. 2010).................11, 12

*Judy v. Blatt, Hasenmiller, Leibsker, & Moore, LLC*, No. 09 Civ. 1226, 2010 U.S. Dist.
LEXIS 8027 (N.D. Ill. Jan. 29, 2010) ....................................................................27

*Kapsis v. Am. Home Mortgage Servicing Inc.*, 923 F. Supp. 2d 430 (E.D.N.Y. 2013)...........26, 29

*Krapf v. Prof'l Collection Servs., Inc.*, 525 F. Supp. 2d 324 (E.D.N.Y. 2007) ............................32

*Lautman v. 2800 Coyle St. Owners Corp*, No. 13 Civ. 967, 2014 WL 2200909
(E.D.N.Y. May 23, 2014) ........................................................................................29

*LVNV Funding LLC v. Guest*, No. 2091-10, 2012 N.Y. Slip. Op. 50974(U),
(Mt. Vernon City Ct. May 29, 2012) ......................................................................15

*Mandarino v. Mandarino*, 180 F. App'x 258 (2d Cir. 2006)......................................28

*Marizio v. Goldsmith*, 230 F.3d 518 (2d Cir. 2000) .................................................29

*May v. Nation Safe Drivers, Inc.*, No. 10 Civ. 2577, 2010 WL 5376216
(D. Minn. Dec. 22, 2010)........................................................................................11

*Meoli v. AT&T Wireless Servs.*, No. A106061, 2005 Cal. App. Unpub. LEXIS 4366
(Cal. Ct. App. May 18, 2005). ................................................................................14

*McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939 (9th Cir. 2011)................27

*Midland Funding, LLC v. Giraldo*, 961 N.Y.S.2d 743 (Nassau Cnty. Ct. 2013) .............29, 30, 33

*Mtume v. AT&T Wireless Servs., Inc.*, No. 05-5218 WJM, 2006 U.S. Dist. LEXIS 3607
(D.N.J. Feb. 1, 2006).............................................................................................14

*Nakahara v. Bal*, No. 97 Civ. 2027, 1998 WL 35123 (S.D.N.Y. Jan. 30, 1998) .........................22

*Nat'l Survival Game, Inc. v. Skirmish, U.S.A., Inc*, 603 F. Supp. 339 (S.D.N.Y. 1985) .............31

*Nelson v. Equifax Info. Servs.*, LLC, 522 F. Supp. 2d 1222 (C.D. Cal 2007) ............................34

*New York v. Feldman*, 210 F. Supp. 2d 294 (S.D.N.Y. 2002).................................29, 30

*Ohlson v. Cadle Co., Inc.*, No. 04 Civ. 3418, 2006 WL 721505
(E.D.N.Y. Mar. 21, 2006) ................................................................................32

*Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 522 (S.D.N.Y. 2013) ..............................27

*Opals on Ice Lingerie v. Body Lines Inc.*, 320 F.3d 362 (2d Cir. 2003) .............................5, 10, 11

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
623 N.Y.S.2d 529 (1995) ..................................................................................33

*Overseas Oil Transp. Corp. of Panama v. Phibro Energy A.G.*, 1989 A.M.C. 847
(S.D.N.Y. Feb. 1, 1989) ....................................................................................16

*Padilla v. Payco Gen. Am. Credits, Inc.*, 161 F. Supp. 2d 264 (S.D.N.Y. 2001) .........................26

*Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F. Supp. 2d 439 .............................................29

*Penberthy v. AT&T Wireless Servs. Inc.*, 354 F. Supp. 2d 1323 (M.D. Fla. 2005) .....................14

*Polanco v. NCO Portfolio Mgmt.*, 930 F. Supp. 2d 547 (S.D.N.Y. 2013) ...................................27

*Raniere v. Citigroup, Inc.*, 827 F. Supp. 2d 294 (S.D.N.Y. 2011), *rev'd on other
grounds*, 533 F. App'x 11 (2d Cir. 2013) ...........................................................6

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 369 F. Supp. 2d 353
(E.D.N.Y. 2005) .................................................................................................32

*Ross v. Am. Express Co.*, 547 F.3d 137 (2d Cir. 2008) ...............................................................5

*Rozier v. Fin. Recovery Sys., Inc.*, No. 10–CV–3273, 2011 WL 2295116
(E.D.N.Y. June 7, 2011) ....................................................................................34

*Sayyed v. Wolpoff & Abramson*, 485 F.3d 226 (4th Cir. 2007) ..................................................27

*S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629 (2d Cir. 1996) .........................17

*Schafer v. AT&T Wireless Servs., Inc.*, No. 04-4149, 2005 WL 850459
(S.D. Ill. Apr. 1, 2004) ......................................................................................15

*Schnabel v. Trilegiant*, 697 F.3d 110 (2d Cir. 2012) ....................................................................8

*Schuh v. Druckman & Sinel LLP*, 602 F. Supp. 2d 454 (S.D.N.Y. 2009) .............................27, 28

*Schultz v. AT&T Wireless Servs., Inc.*, 376 F. Supp. 2d 685 (N.D. W. Va. 2005) .....................14

*Sedima v. Imrex Co.*, 473 U.S. 479 (1985) .................................................................................17

*Shetiwy v. Midland Credit Mgmt.*, 959 F. Supp. 2d 469 (S.D.N.Y. 2013) ..................................11

vi

*Shorts v. AT&T Mobility*, No. 11-1649, 2013 W. Va. LEXIS 720
  (Sup. Ct. App. W. Va. June 17, 2013) ......................................................................14

*Snyder v. U.S. Equities Corp.*, No. 12 Civ. 6092, 2014 WL 317189
  (W.D.N.Y. Jan. 27, 2014) ...........................................................................16, 21, 23

*Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354 (2d Cir. 2008) ......................16

*In re Spiegel Inc.*, No. 03-11540, 2006 WL 2577825 (Bankr. S.D.N.Y. Aug. 16, 2006) ............14

*Starke v. Gilt Groupe, Inc.*, No. 13 Civ. 5497, 2014 WL 1652225
  (S.D.N.Y. Apr. 24, 2014)..........................................................................................11

*State of N.Y. v. Oneida Indian Nation of N.Y.*, 90 F.3d 58 (2d Cir. 1996)...............................13, 14

*Stutman v. Chem. Bank*, 95 N.Y.2d 24 (2000)...............................................................................29

*In re Sumitomo Cooper Litig.*, 995 F. Supp. 451 (S.D.N.Y. 1998) ...................................23, 24, 25

*Sykes v. Mel Harris*, 757 F. Supp. 2d 413, 425 (S.D.N.Y. 2010) .......................................... *passim*

*In re Taranto*, No. 10-76041, 2012 WL 1066300 (Bankr. E.D.N.Y Mar. 27, 2012) ...................15

*Tasini v. AOL, Inc.*, 851 F. Supp. 2d 734.....................................................................................29

*U.S. v. Rodolitz*, 786 F.2d 77 (2d Cir. 1986).................................................................................19

*U.S. v. Eisen*, 974 F.2d 246 (2d Cir. 1992) ...........................................................................19, 20

*Upadhyay v. Sethi*, 848 F. Supp. 2d 439 (S.D.N.Y. 2012) ..........................................................28

*von Bulow v. von Bulow*, 657 F. Supp. 1134, 1145 (S.D.N.Y. 1987)............................................22

*Warnock v. State Farm Mut. Auto. Ins. Co.*, No. 08 Civ. 01, 2008 WL 4594129
  (S.D. Miss. Oct.14, 2008) ........................................................................................20

*Weaver v. James*, No. 10 Civ. 6609, 2011 WL 4472062
  (S.D.N.Y. Sep. 27, 2011) ..........................................................................................21

*Webb v. Midland Credit Mgmt., Inc.*, No. 11 Civ. 5111, 2012 WL 2022013
  (N.D. Ill. May 31, 2012) ...........................................................................................15

*Wilner v. Allstate Ins. Co.*, 893 N.Y.S.2d 208 (2d Dep't 2010) ...................................................29

*Wood v. Capital One Servs.*, 718 F. Supp. 2d 286 (N.D.N.Y. 2010) ...........................................33

*Wright v. Shapiro,* 16 A.D.3d 1042 (N.Y. App. Div. 2005).........................................................31

**STATUTES AND RULES**

15 U.S.C. § 1601 ................................................................................................. 1

15 U.S.C. § 1692a ............................................................................................ 31

15 U.S.C. § 1692f ............................................................................................ 27

18 U.S.C. § 1961 ............................................................................................... 1

18 U.S.C. § 1962 ............................................................................................. 33

Fed. R. Civ. P. 9(b) ........................................................................................ 23

Fed. R. Civ. P. 12(b)(6) .................................................................................... 1

Fed. R. Civ. P. 23(d)(1)(D) .............................................................................. 1

Fed. R. Civ. P. 30(b)(6) .................................................................................... 5

Fed. R. Evid. 1002 ........................................................................................... 7

Fed. R. Evid. 1004 ........................................................................................... 7

N.Y. Gen. Bus. Law § 349 ...................................................................... *passim*

N.Y. Jud. Law § 487 ................................................................................. 1, 34

**OTHER AUTHORITIES**

Assurance of Discontinuance, *In re Investigation by Eric T. Schneiderman, Attorney General of New York, of Portfolio Recovery Assocs., LLC* (Assurance No. 14-108) (May 1, 2014), *available at* http://nylawyer.nylj.com/adgifs/decisions14/050914portfolio.pdf ......................... 30

Assurance of Discontinuance, *In re Investigation by Eric T. Schneiderman, Attorney General of New York, of Sherman Financial Group* (Assurance No. 13-444) (Oct. 23, 2013), *available at* http://nylawyer.nylj.com/adgifs/decisions14/050914sherman.pdf .......................... 30

viii

## **PRELIMINARY STATEMENT**

Plaintiffs Charlette Mayfield, Claude Millien, and Ebony Porter bring this action on behalf of themselves and other similarly situated individuals who have been injured by Defendants' scheme to fraudulently collect on millions of dollars' worth of alleged consumer debts, in violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1601 *et seq.* ("FDCPA"), the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* ("RICO"), New York General Business Law § 349 ("GBL"), and New York Judiciary Law § 487 ("Judiciary Law"). This action follows a similar action previously before this Court, *Bernhart v. Asta Funding, Inc.*, 13 Civ. 2935 (RPP) (S.D.N.Y.) ("*Bernhart*"), which settled after the Court denied Defendants' motions to compel arbitration, to dismiss, and for related relief.

Plaintiffs respectfully submit this memorandum in opposition to the motions brought by Defendants Asta Funding, Inc. ("Asta"), Palisades Collection, LLC ("Palisades Collection"), and Gary Stern ("Stern") (together, "Asta Defendants"), and Defendants Pressler & Pressler, LLP ("Pressler"), Richard A. Franklin, Tin-An A. Wang, Mitchell E. Zipkin, and Craig Stiller (together, "Pressler Defendants"), to: (1) compel Plaintiffs to arbitrate their claims rather than pursue them in this litigation; (2) strike Plaintiffs' class action allegations under Fed. R. Civ. P. 23(d)(1)(D); and (3) dismiss certain of Plaintiffs' claims under Fed. R. Civ. P. 12(b)(6). (*See* Asta Defendants' Mem. in Supp. of Mot. to Strike ("Asta Mem.") and Pressler Defendants' Mem. in Supp. of Partial Mot. to Dismiss ("Pressler Mem.").)

All of Defendants' motions lack merit and should be denied. Defendants' motion to compel arbitration recapitulates their nearly identical motion in *Bernhart*, which this Court denied: just as before, Defendants have failed to produce or even identify the agreements they claim compel Plaintiffs to arbitrate, and the sample agreements of non-parties on which they again rely contain precisely the language this Court already found to exclude the present dispute.

Their motion to preclude Plaintiffs from litigating as class representatives likewise fails, as they have not proved that Plaintiffs entered any agreements giving up that critical right.

Defendants' hodgepodge of motions to dismiss fares no better.  First, Plaintiffs have adequately pleaded violations of RICO based on Defendants' systematic scheme to defraud thousands of consumers, in furtherance of which they used the interstate mails and wires; articulated copious and particularized allegations of racketeering activity by each Defendant; and alleged a valid RICO enterprise.  Second, Plaintiffs Millien's and Porter's claims are not time-barred, since, among other reasons, the Complaint plainly pleads violations that occurred within relevant statutory periods.  Third, Plaintiffs' GBL claims target consumer-oriented, deceptive conduct well within the heartland of the unlawful practices the statute proscribes.  Fourth, Plaintiffs properly named the individual defendants based on their specific violations of the GBL and the FDCPA.  Finally, Plaintiffs' allegations of actual damages are more than sufficient to meet the pleading requirements for each of their claims.

## **BACKGROUND**

Plaintiffs brought this suit against Defendants seeking relief from injuries caused by Defendants' scheme to fraudulently collect millions of dollars in purported debts from New York City consumers.  In 2004, Asta and Palisades Collection began purchasing consumer telecommunications debt from AT&T Wireless.  (Compl. ¶ 3.)  Asta and Palisades Collection are "debt buyers"; they buy defaulted, charged-off debts for pennies on the dollar, and then seek to collect the full face value of the debts for profit.  (*Id.* ¶ 25.)  At the time of these purchases from AT&T, Asta and Palisades Collection obtained only skeletal information about the debts, and no underlying account documentation at all.  (*Id.* ¶¶ 38, 42.)  By 2005, Asta and Palisades Collection, at the direction of Stern, had implemented a strategy to collect on debts like those from AT&T Wireless by commencing mass litigation.  (*Id.* ¶¶ 49-51.)  The Asta Defendants

2

retained Pressler & Pressler to initiate thousands of lawsuits against New York City consumers to collect the AT&T Wireless debts.  (*Id.* ¶¶ 51-60.)

In the course of commencing, litigating, and collecting through these suits, the Pressler Defendants and the Asta Defendants repeatedly violated the FDCPA, RICO, the GBL, and the Judiciary Law.  (*Id.* ¶¶ 351-407.)  Defendants initiated these suits without having, being able to obtain, or intending to obtain the evidence necessary to prove their claims (*id.* ¶¶ 83-85); the Pressler Defendants filed thousands of baseless "verified" complaints without meaningful attorney review, and failed to notify consumers of the lawsuits so they would not appear in court to contest the cases (*id.* ¶¶ 51-69, 100, 114, 118); Palisades Collection submitted fraudulent affidavits in support of default judgment applications (*id.* ¶¶ 114-21); and Defendants used (and continue to use) those judgments to improperly seize consumers' wages and assets (*id.* ¶¶ 135-36, 142), among other misconduct.  Through these tactics, Defendants have unlawfully seized millions of dollars from consumers.  (*Id.* ¶¶ 1, 4.)

Plaintiffs Mayfield, Millien, and Porter are three individuals injured by Defendants' scheme.  Ms. Mayfield learned that Defendants had obtained a judgment against her when her employer received a garnishment order in 2013 and, at around the same time, she was denied a mortgage because of her negative credit history, including the judgment.  (*Id.* ¶ 169.)  Ms. Mayfield never had an AT&T Wireless account and was never served with process notifying her of the lawsuit.  (*Id.* ¶¶ 185, 195.)  Mr. Millien learned of the judgment against him when his wages were garnished in 2013; he likewise never had an AT&T account and was never served. (*Id.* ¶¶ 234, 248, 256.)  Ebony Porter also learned of Defendants' misconduct when her wages were garnished in 2013; she did not owe any money to AT&T Wireless and was never served. (*Id.* ¶¶ 298, 312, 315, 320-322.)  Defendants obtained default judgments against all three using

fraudulent affidavits.  (*Id.* ¶¶ 210, 271, 337.)  These judgments caused Plaintiffs substantial

hardship, and when they sought to have those judgments vacated, Defendants opposed their

efforts through additional unlawful conduct.  (*Id.* ¶¶ 214-220; 222-223; 225-226; 228; 278-284;

286-293; 340-343; 346.)  Nonetheless, each ultimately was able to have the judgment vacated.

(*Id.* ¶¶ 221, 285, 345-346.)  But similar judgments remain outstanding against thousands of other

consumers, and have been (and will be) used to seize those consumers' assets.  (*Id.* ¶¶ 129-137.)

Plaintiffs Mayfield, Millien, and Porter were putative class members in the predecessor

action, *Bernhart*, filed in this Court on May 1, 2013, which alleged the same wrongful

conspiracy by Asta and Pressler Defendants as the instant Complaint.  Defendants moved to

compel two of the *Bernhart* named plaintiffs to arbitrate their disputes, but did not produce or

even identify any contractual agreements to arbitrate supposedly entered by either plaintiff.

This Court denied Defendants' motion from the bench, finding that they had not met their

burden to establish that plaintiffs entered binding agreements to arbitrate.  (Tr. of Oral Arg.,

*Bernhart*, Dkt. No. 60 at 47:4-17 (Dec. 12, 2013) ("Tr."); Order, *Bernhart*, Dkt. No. 63 at 1

(Dec. 16, 2013) ("*Bernhart* Denial Order").)  The Court also denied Defendants' motion on the

alternative basis that the *Bernhart* plaintiffs' claims "relate[d] solely to the collection of any

debts [AT&T Wireless customers] owe[d] to [AT&T Wireless]," thus falling within the

exclusionary clause in the "[s]ample" agreements Defendants did introduce.  (*Bernhart* Denial

Order at 2.)  The Court denied Defendants' motion to dismiss the claims of one plaintiff under

the Rooker-Feldman doctrine and claim preclusion.  (*Id.* at 2.)

Asta Defendants noticed an interlocutory appeal of the Court's denial of their arbitration

motion.  (Notice of Appeal, *Bernhart*, Dkt. No. 64 (Dec. 17, 2013).)  Defendants moved this

Court and the Court of Appeals to stay discovery while that appeal was pending, but both courts

4

denied the stay motions.  (Order, *Bernhart*, Dkt. No. 65 (Dec. 16, 2013); Certified Order,

*Bernhart v. Asta Funding, Inc.*, No. 13-4729-cv, Dkt. No. 75 (2d Cir. Feb. 27, 2014).)  Shortly

before Defendants' deadlines to provide initial class discovery and tender Fed. R. Civ. P.

30(b)(6) witnesses, Defendants made settlement offers to the four individual *Bernhart* named

plaintiffs, which those plaintiffs accepted.  *Bernhart* was dismissed on March 24, 2014, without

prejudice to any claims on behalf of the putative class.  The current Plaintiffs filed this successor

action on April 11, 2014 on behalf of themselves and similarly situated individuals.

## ARGUMENT

I.      **THIS COURT SHOULD DENY DEFENDANTS' MOTIONS TO COMPEL
        ARBITRATION AND STRIKE CLASS ALLEGATIONS BECAUSE
        DEFENDANTS HAVE NOT SHOWN THAT PLAINTIFFS AGREED TO
        ARBITRATE OR WAIVE CLASS ACTION RIGHTS.**

      A.      **Defendants Bear the Burden of Establishing That Plaintiffs Agreed to
                Arbitrate This Dispute or Waive Their Rights to Litigate as a Class.**

It is fundamental that arbitration "is a matter of consent, not coercion."  *Ross v. Am.*

*Express Co*., 547 F.3d 137, 143 (2d Cir. 2008) (quotation marks omitted).  The law thus

"requires that parties actually agree to arbitration before it will order them to arbitrate a dispute."

*Opals on Ice Lingerie v. Body Lines Inc*., 320 F.3d 362, 369 (2d Cir. 2003).  As the parties

seeking to compel arbitration, Defendants "bear[] the burden to establish that a binding

agreement was made and to prove the terms" of that agreement.  *Dreyfuss v. eTelecare Global*

*Solutions-U.S. Inc*., 349 Fed. App'x 551, 555 (2d Cir. 2009) ("*Dreyfuss II*") (citation omitted).

Where the moving party fails to "make a prima facie initial showing that an agreement to

arbitrate existed," a motion to compel arbitration must be denied.  *Hines v. Overstock.com, Inc*.,

380 F. App'x 22, 24 (2d Cir. 2010).

Similarly, a party seeking to enforce a class action waiver must establish the existence of

an agreement to waive such rights under ordinary principles of contract law.  *Raniere v.*

*Citigroup, Inc*., 827 F. Supp. 2d 294, 305 (S.D.N.Y. 2011), *rev'd on other grounds*, 533 F.

App'x 11 (2d Cir. 2013).  Just as in the arbitration context, New York law requires the party

seeking to enforce a contractual provision, including a class action waiver, "'to establish that a

binding agreement was made and to prove the terms of the contract.'"  *Dreyfuss II,* 349 Fed.

App'x at 555 (quoting *Allied Sheet Metal Works, Inc. v. Kerby Saunders, Inc*., 619 N.Y.S.2d

260, 263 (1st Dep't 1994)).

> **B.     Defendants Have Neither Identified Plaintiffs' Supposed Contracts Nor Proved Their Contents.**

Defendants contend that this Court should compel Plaintiffs to arbitrate their claims, and

eliminate their rights to litigate on behalf of similar victims, on the basis of supposed agreements

to arbitrate and waive class action rights *that Defendants have not identified or produced*.  For

precisely the reasons the Court denied Defendants' similar motions in *Bernhart*, it should deny

the instant motions.

In *Bernhart*, Defendants moved to compel two plaintiffs to arbitrate on the basis of

language contained in four "sample" agreements entered *not* by those plaintiffs, but by non-

parties who were the subject of unrelated court proceedings.  (*See* Asta Mem. in Supp. of Mot. to

Compel, *Bernhart*, Dkt. 28, at 2-4 (Sept. 4, 2013).)  Indeed, Defendants repeatedly conceded that

they had not submitted, and did not even possess, agreements that purportedly bound the

individuals against whom they moved.[1]  Defendants admitted that the only way they could

"definitively prove" such agreements to the Court would be to obtain from AT&T Wireless

"copies of the terms and conditions" that governed each of the accounts purportedly opened by

---

[1] (*See, e.g*., Tr. 4:4 (admitting that Defendants' "moving papers don't attach the specific account agreement between the named plaintiffs in this case, and AT&T Wireless"); *id*. 6:18-22 (conceding that "there is no getting around" the fact that the four AT&T Wireless customer agreements Defendants did submit, filed in other court proceedings and involving non-parties, were "an imperfect substitute" for the actual arbitration agreements on which their motion relied); *id*. 41:14-16 (agreeing with Court's statement that "[Defendants] haven't really proved [they]'ve got an agreement to arbitrate").)

the plaintiffs—which Defendants claimed they could have obtained by serving a subpoena on AT&T, but did not try to obtain before making their motion.  (Tr. 6:1-15; 40:2-9; 41:14-23.)  The Court correctly held that Defendants had not met their burden because they "ha[d] not identified the arbitration agreements that mandate arbitration" by those plaintiffs.  (Tr. 47:4-17; *Bernhart* Denial Order at 1 ("Defendants failed to establish that a binding agreement was made between any of the Plaintiffs and any of the Defendants requiring arbitration.").)

Once again, Defendants have moved without providing the supposed agreements on which their motion relies, admitting that "[Asta] cannot produce the specific Welcome Guide that was given to each of the individual Named Plaintiff[s]."  (Asta Mem. 16.)  Defendants have supplemented the record on which they made their previous motion only by adding the Declaration of Don Van Hise, an employee of AT&T Wireless's successor company, which they obtained through their belated subpoena to AT&T.  (Don Van Hise Decl. ¶ 1 ("Van Hise Decl."), Ex. 1 to Joshua Berman Decl. ("J. Berman Decl.").)  Critically, Mr. Van Hise attests that AT&T *does not possess* "customer account documents," presumably including applicable account terms and conditions, from 2001 and 2002, the years accounts supposedly were opened in Plaintiffs' names.  (*Id.* ¶ 2.)  Nonetheless, Mr. Van Hise purports to state as a general matter that account terms from that era "contained a provision requiring AT&T Wireless customers to bring disputes against AT&T Wireless or its assignees through private, individual arbitration."  (Van Hise Decl. ¶ 4.)[2]  Even if Mr. Van Hise's testimony were admissible on this point,[3] he does not provide the language of such provisions or of any other relevant terms, and the eighteen sample terms and

---

[2] As a matter of fact, *none* of the sample agreements attached to the J. Berman Declaration extend the arbitration provision to "assignees," as Mr. Van Hise states, casting doubt on the credibility of his other representations about "all" AT&T Wireless Welcome Guides.  *See, e.g.*, J. Berman Decl. Ex. 4 (applying clause to "[a]ny dispute or claim, including those against any of our *subsidiary, parent, or affiliate companies* [but not assignees], arising out of or relating to this Agreement" (emphasis added)); Van Hise Decl. ¶ 2.

[3] Defendants have not made a showing adequate to admit Mr. Van Hise's testimony as secondary evidence of the contents of a writing.  *See* Fed. R. Evid. 1002, 1004(1).

conditions Defendants provided show that such provisions and related terms varied from account to account.  Mr. Van Hise does not explain how AT&T customers were notified of these supposed provisions.  And he says nothing whatsoever regarding the accounts, or supposed agreements, of Plaintiffs Mayfield, Millien, and Porter.

Even if Mr. Van Hise's general assertions were true—an issue on which Plaintiffs reserve the right to seek discovery, including the opportunity to depose Mr. Van Hise—they do not cure the profound deficiencies in Defendants' motions.  Regardless of the contents of any terms AT&T Wireless supposedly disseminated, Mr. Van Hise's Declaration does not establish that *these Plaintiffs* ever received or knowingly assented to any of them.  Indeed, Defendants have offered *literally no evidence* even purporting to describe the manner in which Plaintiffs supposedly were notified of, or agreed to, any arbitration provision.  The Second Circuit has repeatedly held that parties cannot be bound to arbitrate absent an initial evidentiary showing by the movant of notification and knowing acceptance.  Where a party seeking to compel arbitration fails to prove that a consumer was put on notice of an arbitration term and then manifested assent to it, the motion to compel must be denied.  *Hines*, 380 F. App'x at 24; *see also Schnabel v. Trilegiant*, 697 F.3d 110, 118 (2d Cir. 2012) (affirming denial of motion to compel for failure to prove plaintiff received notice of arbitration provision); *see also Bernhart* Denial Order at 1 (citing *Hines* in support of holding that Defendants failed to establish that Plaintiffs entered a binding arbitration agreement).[4]

The generalizations in the Van Hise Declaration are also insufficient to meet Defendants'

---

[4] Just as in *Bernhart*, Defendants also have failed here even to establish that Plaintiffs ever opened AT&T accounts at all (much less agreed to any particular terms in so doing).  Both Ms. Mayfield and Mr. Millien explicitly deny in the Complaint that they ever opened such accounts.  (*See* Compl. ¶¶ 185, 248.)  Asta relies on Exhibits 2-7 to the Declaration of Seth Berman  ("S. Berman Decl.") for the proposition that all three Plaintiffs opened accounts (*see* Asta Mem. nn. 5 & 8), but these exhibits are not admissible as "business records," or any other exception to the hearsay rule, to prove that point.

burden to "prove the terms" of any arbitration agreement.   *Dreyfuss II*, 349 F. App'x at 555 (quotation marks omitted); *see also Dreyfuss v. eTelecare Global Solutions-U.S. Inc.*, No. 08 Civ. 1115, 2008 WL 4974864, at *4 (S.D.N.Y. Nov. 19, 2008) ("*Dreyfuss I*") (party must identify a "sufficiently definite" contract to obtain enforcement), *aff'd*, 349 F. App'x 551.  Even if Defendants could prove that each Plaintiff entered a specific agreement with *an* arbitration clause—which they have failed to do in any event—they cannot compel arbitration without establishing the particularities of each person's contract on the "entire range of matters relevant to the conduct of arbitration proceedings." *Dreyfuss II*, 349 F. App'x at 554.  Absent that showing, Defendants "cannot meet [their] burden of showing that the meeting of the minds necessary for the existence of an enforceable contract took place." *Id.*

     The *eighteen* different terms and conditions Defendants have submitted in support of their motions make clear that Defendants have not, and cannot, meet this burden, as the arbitration provisions in these sample agreements differ in material respects.  As just one example, one version provides that the customer and AT&T will split arbitration fees equally for all claims over $1,000 (J. Berman Decl. Ex. 7, at 25), while others limit a customer's arbitration fees for claims between $1,000 and $10,000 to the equivalent of a court filing fee (J. Berman Decl. Ex. 4, at 36).  Defendants do not even assert—much less prove—which of these myriad versions govern the accounts they claim Plaintiffs opened.  Defendants' argument that Plaintiffs should not be permitted to exploit the "passage of time" to "evade their obligation to arbitrate," since AT&T accounts from the time period supposedly were subject to *an* arbitration clause, is thus irrelevant (among other problems), since it ignores the law's requirement that Defendants establish all relevant terms of any arbitration agreement.  (Asta Mem. 16.)

The Second Circuit has squarely rejected motions to compel arbitration that were supported by much more specific evidence than Defendants have produced here, on the ground that the moving party failed to establish the existence and terms of supposed arbitration agreements.  In *Opals*, although the moving party—unlike Defendants here—produced documents signed by each party containing an arbitration provision, the party seeking to enforce the arbitration provision could not prove that both parties signed the *same* document.  320 F.3d at 365-66.  The version signed by one party called for arbitration in New York; the other for arbitration in California.  *Id.* at 371-72.  Despite each party having manifested an intent to arbitrate, the Court refused to mandate arbitration, because the differences in the contracts each signed were "significant" and the party seeking arbitration had not demonstrated a "meeting of the minds."  *Id.* at 372; *see also Hallmark v. Cohen & Slamowitz, LLP*, No. 11 Civ. 842S, 2013 WL 5178128, at *4 (W.D.N.Y. Sept. 16, 2013) (rejecting debt collector's reliance on partial credit card agreement where "no indication" that the customer signed it).

In *Dreyfuss*, the party seeking arbitration claimed that the plaintiff signed an employment agreement mandating arbitration, and produced its first page (containing an arbitration clause) and signature page, but not the page(s) in between.  *Dreyfuss II*, 349 F. App'x at 552.  As in this case, the defendant used several arbitration agreements, rather than a "single standard document," during the relevant period.  *Id.* at 552-53.  The Court held that the defendant had not established an "enforceable agreement" to arbitrate.  *Id.* at 553-54.

Defendants' argument here is substantially weaker than those in *Opals* and *Dreyfus*: they contend that the Court should deprive these Plaintiffs of their litigation rights because AT&T customer agreements contained *some form* of arbitration clause.  Even if Defendants had proved that all customer agreements did contain some arbitration provision, and had proved that

Plaintiffs entered any customer agreement at all—neither of which they have done—the argument plainly fails under established law.

Defendants' motion to strike Plaintiffs' class action allegations fails for similar reasons. Again, Defendants rely on a generalization in the Van Hise Declaration, stating that customer contracts during the supposedly relevant time period contained some provision "prohibiting AT&T Wireless customers from participating in class action lawsuits." (Van Hise Decl. ¶ 4.) But they have offered no evidence that any Plaintiff knowingly entered a specific agreement to waive his or her class action rights. *See Dreyfuss II*, 349 F. App'x at 555; *Hines*, 380 F. App'x at 24. Nor have they met their burden to establish a "meeting of the minds on all essential terms" of any such waiver provision. *Opals*, 320 F.3d at 372 (quotation marks omitted).[5]

The motion to strike must be denied for other reasons as well. Motions to strike class action allegations on any basis are particularly "disfavored," because they ask the court to "preemptively terminate the class aspects of litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." *Ironforge.com v. Paychex, Inc.*, 747 F. Supp. 2d 384, 404 (W.D.N.Y. 2010) (quotation marks and alterations omitted). "[D]efendants have the burden of demonstrating from the face of plaintiffs' complaint that it will be *impossible* to certify the classes alleged by the plaintiffs regardless of the facts the plaintiffs may be able to prove." *Bryant v. Food Lion, Inc.*, 774 F. Supp. 1484, 1495 (D.S.C. 1991) (applying Rule 12 standard to motion to deny class certification) (emphasis added). Since

---

[5] The cases Asta cites in support, (*see* Asta Mem. 9-10), are thus irrelevant. *See Shetiwy v. Midland Credit Mgmt.*, 959 F. Supp. 2d 469, 471-72 (S.D.N.Y. 2013) (undisputed that plaintiffs entered specific cardmember agreements containing arbitration and class action waiver terms); *Starke v. Gilt Groupe, Inc.*, 13 Civ. 5497, 2014 WL 1652225, at *2-3 (S.D.N.Y. Apr. 24, 2014) (finding, on undisputed facts, that plaintiff knowingly assented to specific arbitration and class action waiver terms); *May v. Nation Safe Drivers, Inc.*, No. 10 Civ. 2577, 2010 WL 5376216, at *3 (D. Minn. Dec. 22, 2010) (undisputed that plaintiffs entered specific agreement containing arbitration and class action waiver terms).

motions to strike class allegations are evaluated "solely on the basis of what is alleged in the complaint," the fact that two Plaintiffs have explicitly alleged that they did not have AT&T accounts (*see* Compl. ¶¶ 185, 248) is an independent basis on which to deny the motion. *Ironforge*, 747 F. Supp. 2d at 404.

Asta contends that even if those Plaintiffs did not have accounts, the class allegations nonetheless should be "stricken as to all putative class members who had accounts with AT&T," because the Plaintiffs could not "represent issues 'common' to the putative class." (Asta Mem. 3.) That is precisely the type of class certification argument that courts repeatedly have rejected as "premature" on a motion to strike. *Calibuso v. Bank of Am. Corp.*, 893 F. Supp. 2d 374, 388 (E.D.N.Y. 2012) (denying motion to strike where complaint sufficiently alleged commonality); *Chenensky v. N.Y. Life Ins. Co.*, No. 07 Civ. 11504(WHP), 2011 WL 1795305, at *2-4 (S.D.N.Y. Apr. 27, 2011) (denying pre-class-discovery motion to strike based on claimed lack of commonality and typicality); *Belsito Commc'ns, Inc. v. Dell, Inc.*, No. 12 Civ. 6255, 2013 WL 4860585, at *11 (S.D.N.Y. Sept. 12, 2013) (denying motion to strike because defendants prematurely disputed class's ascertainability). The Complaint alleges that Plaintiffs, whom Defendants sued through the same unlawful conduct and on the basis of the same fraudulent documents as they sued the thousands of other class members, are typical of the class, and that the class raises common questions of law and fact. (*See, e.g.*, Compl. ¶¶ 161-63.)

For all of these reasons, Defendants' motions to compel arbitration and strike class action allegations must be denied.[6]

---

[6] Should the Court at any point determine that Defendants have met their burden to establish that particular arbitration or class action waiver terms applied to any Plaintiff's account, and that particular procedures manifested the Plaintiff's assent thereto, Plaintiffs reserve the right to take discovery on whether each Plaintiff was an AT&T accountholder; the specific terms of any account agreement; whether each Plaintiff was presented with, and agreed to, those terms; as well as additional discovery related to the enforceability of any such terms. *See, e.g., Berger v. Cantor Fitzgerald Secs.*, 942 F. Supp. 963, 966 (S.D.N.Y. 1996). To the extent material facts are disputed after that discovery, Plaintiffs are entitled to a hearing. *See Bensadoun v. Jobe–Riat*, 316 F.3d 171, 175 (2d Cir. 2003).

C.     **All of the Sample Terms and Conditions Plainly Exclude Plaintiffs'
        Collections-Related Claims From Mandatory Arbitration.**

Even if Defendants had established that any Plaintiff was an account holder bound by

identifiable terms—which they have not done—all of the sample arbitration clauses they provide

plainly entitle Plaintiffs to elect to litigate the claims in this case.  This Court correctly held in

*Bernhart* that the clauses' debt-collection exception encompassed Plaintiffs' claims, and nothing

Defendants have argued here should change that result.  (*See Bernhart* Denial Order at 2.)

*All* of the terms and conditions Defendants submitted with their motion plainly exclude

claims relating to debt collection:  "Any dispute or claim. . .  arising out of or relating to this

Agreement . . . will be resolved by binding arbitration except that (1) you may take claims to

small claims court if they qualify for hearing by such a court, or (2) ***you or we may choose to***

***pursue claims in court if the claims relate solely to the collection of any debts you owe to us***."

(J. Berman Ex. 4 at 35 (emphasis added).)  Notably, all eighteen samples contain precisely the

italicized language.

The Court must give effect to this "clear and unambiguous" exclusionary clause.  *State of*

*N.Y. v. Oneida Indian Nation of N.Y.*, 90 F.3d 58, 62 (2d Cir. 1996).  The claims in the

Complaint plainly relate solely to Defendants' debt collection practices.  *Id.* at 61 (in determining

whether claim falls into exclusionary clause, courts look to complaint); *see also Bernhart* Denial

Order at 2.  The Asta Defendants purchase debts like those from AT&T Wireless solely for the

purpose of collecting on them; no other aspect of the customer's relationship with AT&T is

implicated.  (*See* Compl. ¶¶ 25-26, 35, 47.)  All of Defendants' alleged misconduct—filing

baseless complaints and fraudulent affidavits, among other things—occurred in the course of

collecting debts purportedly owed to AT&T Wireless.  (*See id.* ¶¶ 3, 43-155.)

Moreover, as this Court noted in denying Defendants' motion in *Bernhart*, "'relating to'

13

is a classically broad term"—more than broad enough to cover the claims in this action. (*Bernhart* Denial Order at 2 (citing *In re Spiegel Inc.*, No. 03-11540, 2006 WL 2577825, at *10 n.4 (Bankr. S.D.N.Y. Aug. 16, 2006)).)  Plaintiffs' and the Court's reading of the provision also gives effect to its expressly bilateral nature: "*you or we* may choose to pursue claims in court if the claims relate solely to the collection of any debts you owe to us."  (J. Berman Ex. 4 at 35 (emphasis added).)  Defendants would rewrite the provision to read, "*we* may choose to pursue claims in court if the claims *are for* the collection of debts you owe to us"—and AT&T, as the sophisticated drafting party, could have written it that way—but that is simply not what the provision says.  Notwithstanding any abstract policy favoring arbitration, courts "[must] not don blinders to the[] obvious meaning [of an exclusionary clause] and thereby thwart the reasonable expectations of the parties." *Oneida*, 90 F.3d at 63.

Defendants' laundry list of other cases in which courts compelled arbitration is irrelevant because, unlike this lawsuit, none concerned AT&T's debt collection practices at all, much less related solely to such practices.  (Asta Mem. 13-14.)  Instead, they concerned AT&T's acts as a provider of phone service—for example, whether AT&T imposed unauthorized fees on customers, invaded their privacy, lied about their phones' capabilities, and so on.[7]  None of the

---

[7]  *See Penberthy v. AT&T Wireless Servs. Inc.*, 354 F. Supp. 2d 1323 (M.D. Fla. 2005) (privacy law violation for unauthorized dissemination of accountholder's information); *Mtume v. AT&T Wireless Servs., Inc.*, No. 05-5218 WJM, 2006 U.S. Dist. LEXIS 3607 (D.N.J. Feb. 1, 2006) (consumer fraud claim arising out of forced migration to Cingular following merger); *Heiko Law Offices, P.C. v. AT&T Wireless Servs., Inc.*, 800 N.Y.S.2d 347 (Sup. Ct. N.Y. Feb. 22, 2005) (breach of contract and fraud action arising out of service failures and unauthorized charges); *Fonte v. AT&T Wireless Servs., Inc.*, 903 So.2d 1019 (Fla. Dist. Ct. App. 2004) (state law consumer fraud action arising out of unilateral change of customer rate plans); *Meoli v. AT&T Wireless Servs.*, No. A106061, 2005 Cal. App. Unpub. LEXIS 4366, at *2 (Cal. Ct. App. May 18, 2005) (challenging early termination fee under California consumer protection laws); *Bucy v. AT&T Wireless Servs.*, No. A105910, 2005 Cal. Unpub. LEXIS 4368, at *1 (Cal. Ct. App. May 18, 2005) (challenging local number portability fee and stating that debt collection exception did not "affect[] the current proceedings" because they "do not involve a debt collection matter"); *Chandler v. AT&T Wireless Servs., Inc.*, 358 F. Supp. 2d 701 (S.D. Ill. 2005) (challenging "early cancellation fee" provision); *Schultz v. AT&T Wireless Servs., Inc.*, 376 F. Supp. 2d 685 (N.D. W. Va. 2005) (breach of contract and other claims arising out of withdrawal of plaintiffs' bank account funds); *Crandall v. AT&T Mobility, LLC.*, No. 07 Civ. 00750, 2008 U.S. Dist. LEXIS 55280 (S.D. Ill. July 18, 2007) (common law fraud for misleading consumers about phones' capabilities); *Shorts v. AT&T Mobility*, No. 11-1649, 2013 W. Va. LEXIS 720 (Sup. Ct. App. W. Va. June 17, 2013)

cases raised an FDCPA or related claim, and not one even considered an argument that the debt-collection exception applied to the dispute.  This Court should again hold that the debt-collection exception is an alternative basis on which to deny Defendants' motion to compel arbitration.

>    **D.      Defendants, As Non-Signatories, Cannot Invoke The Arbitration Provision
>             or Class Action Waiver Against Plaintiffs.**

Defendants' motions to compel and strike class allegations suffer from yet another deficiency: Defendants have not shown they can enforce any arbitration or class action waiver provision because they have failed to establish Palisades Collection's chain of title to Plaintiffs' specific accounts.  Defendants proffer a Purchase and Sale Agreement they claim provided master terms to govern transfers of batches of AT&T Wireless accounts to Palisades Collection, but do not provide any Bills of Sale for the transactions that supposedly transferred Plaintiffs' specific accounts.  (*See* S. Berman Decl. ¶ 6 & Ex. 1.)  As Defendants have not met their burden to prove that Plaintiffs' purported accounts were assigned to Palisades Collection, and thus that Palisades Collection has any basis on which to enforce any rights associated with those accounts, Defendants' motions must be denied.  *See, e.g.*, *Webb v. Midland Credit Mgmt., Inc.*, No. 11 Civ. 5111, 2012 WL 2022013, at *5 (N.D. Ill. May 31, 2012); *see also LVNV Funding LLC v. Guest*, No. 2091-10, 2012 N.Y. Slip. Op. 50974(U), at *6 (Mt. Vernon City Ct. May 29, 2012); *In re Taranto*, No. 10-76041, 2012 WL 1066300, at *9 (Bankr. E.D.N.Y Mar. 27, 2012).

Even if Defendants had established Palisades Collection's chain of title, none of the remaining Defendants have proved their entitlement to enforce any arbitration or class action waiver rights.  Pressler Defendants argue that they may do so as Palisades Collection's agents. (Pressler Defts' Joinder as to Asta Defts' Mot. to Compel Arb. at 2-3 ("Pressler Joinder").)  But they have not provided the requisite "documentary or other evidence to substantiate [their]

---

(challenging early termination fee); *Schafer v. AT&T Wireless Servs., Inc.*, No. 04-4149, 2005 WL 850459 (S.D. Ill. Apr. 1, 2004) (fraud claim challenging roaming fees).

claim" that they are entitled to enforce the agreement in this capacity. *Overseas Oil Transp. Corp. of Panama v. Phibro Energy A.G.,* 1989 A.M.C. 847, 850 (S.D.N.Y. Feb. 1, 1989).

Asta Defendants, for their part, claim that Plaintiffs should be estopped from refusing to arbitrate with them under equitable principles. (Asta Mem. 15.) Asta Defendants cannot meet the criteria for estoppel, however, because the contracts purportedly containing the arbitration and class action waiver provisions, which concerned cellular phone service, were not "intertwined" with the subject of this dispute: debt collection practices. *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 358-59 (2d Cir. 2008). Nor have they established that they had a sufficiently close relationship with the original signatory, AT&T—that is, that an accountholder would have "reasonably seen" that any agreement to arbitrate with AT&T would extend to the parent company and executive of a future, unidentified buyer of his charged-off account. *Id.* at 358-63.

## II.    THIS COURT SHOULD DENY DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' RICO CLAIMS.

### A.    Defendants' Acts of Mail and Wire Fraud Constitute RICO Predicate Acts.

Plaintiffs' detailed allegations of Defendants' systematic scheme to defraud thousands of consumers, in furtherance of which they used the interstate mails and wires, plainly state a claim under RICO. Defendants argue that Plaintiffs' RICO claims must nonetheless be dismissed because of a purported judge-made exception for predicate acts that are "litigation activities." (Pressler Mem. 7; *see also* Asta Mem. 17.) For this supposed exception, Defendants rely on dicta in an unreported, unopposed, and never-cited district court decision, which in turn relied on other cases that are factually and legally inapplicable here. *See Snyder v. U.S. Equities Corp.*, No. 12 Civ. 6092, 2014 WL 317189 (W.D.N.Y. Jan. 27, 2014). But nothing in the RICO or mail and wire fraud statutes, or applicable case law, supports dismissing Plaintiffs' claims.

To establish a civil RICO violation, a plaintiff must show that he was injured by defendants' "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima v. Imrex Co*., 473 U.S. 479, 496 (1985). Racketeering activity includes acts indictable as mail or wire fraud, which a plaintiff has pleaded where he alleges "(1) the existence of a scheme to defraud; (2) defendant's knowing or intentional participation in the scheme; and (3) the use of interstate mails or transmission facilities in furtherance of the scheme." *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp*., 84 F.3d 629, 633 (2d Cir. 1996). "The gravamen of the [mail fraud] offense is the scheme to defraud, and any mailing that is incident to an essential part of the scheme satisfies the mailing element, even if the mailing itself contains no false information" and even if no one relied on any misrepresentation. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647 (2008) (quotation marks omitted). To establish a "pattern" of mail or wire fraud, a plaintiff must allege that at least two racketeering acts committed in a ten-year period were related—that is, had the same or similar purposes—and continuous—for example, by alleging that they were a "regular way of conducting" defendants' business. *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 520-21 (2d Cir. 1994). "RICO is to be read broadly," and should be "liberally construed to effectuate its remedial purposes." *Sedima*, 473 U.S. at 497-98. On Defendants' motion to dismiss, the Court must consider as true all factual allegations contained in the Complaint. *See Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1097 (2d Cir. 1988).

Here, Plaintiffs allege that Defendants' enterprise engaged in a widespread fraudulent scheme to purchase deeply discounted debts, then conduct systematic fraud based on uniform misrepresentations to seize Plaintiffs' and other consumers' property, and that they used the mails and wires in furtherance of that scheme. (*See* Compl. ¶¶ 1-4, 25-155.) Specifically, Asta Defendants, directed by Defendant Stern, masterminded a scheme by which Asta and Palisades

bought telecommunications debts from AT&T Wireless for pennies on the dollar (*id.* ¶¶ 43-44); received from AT&T a "stream of data" containing limited information about the debts but no underlying documentation (*id.* ¶ 38); and retained the Pressler Defendants to collect on the debts (*id.* ¶¶ 3, 25, 43, 47).  Defendants knew they did not have, and could not or would not obtain, evidence sufficient to prove the debts in contested court cases.  (*Id.* ¶¶ 77-79.)  Nonetheless, Pressler initiated tens of thousands of lawsuits on behalf of the Asta Defendants (*id.* ¶¶ 3, 47-51), suing hundreds of consumers daily with baseless "verified complaints" generated without meaningful review and using only the stream of data Asta Defendants obtained from AT&T (*id.* ¶¶ 3, 61, 68-80).  To ensure that the individuals they sued would not appear in court to oppose the suits, Defendants retained process servers known to engage in sewer service.  (*Id.* ¶¶ 3, 81-91).  Defendants then obtained entry of default judgments based on fraudulent affidavits.  (*Id.* ¶¶ 3, 97-104.)  Defendants used these default judgments to forcibly collect Plaintiffs' and class members' property in the form of wages and bank accounts.  (*Id.* ¶¶ 129-136.)  When Plaintiffs and class members eventually learned of the judgments, Defendants opposed their efforts to have the judgments vacated and tried to extract settlements so Defendants could profit without ever proving their underlying claims.  (*Id.* ¶¶ 141, 151.)  The Complaint alleges over thirty-nine specific uses of interstate mails or transmission facilities in furtherance of this fraudulent scheme (*see, e.g.*, *id.* ¶¶ 373(a)-(f), 374(a)-(r)), and alleges that the mails and wires were used on thousands of other occasions known to Defendants (*see, e.g.*, *id.* ¶¶ 372(a)-(g), 375-78).

These allegations more than adequately plead a scheme to defraud, Defendants' participation in it, and the use of the mails and wires to further it—and thus satisfy the statutory elements of mail and wire fraud.  They also allege a "pattern" under RICO: continuous and related acts that were Defendants' regular way of doing business.  The Supreme Court and

18

Second Circuit have made clear that, where a plaintiff meets these statutory elements, the inquiry ends: courts may not impose additional restrictions on RICO "to reflect their . . . views of good policy.  We have repeatedly refused to adopt narrowing constructions of RICO in order to make it conform to a preconceived notion of what Congress intended to proscribe."  *Bridge*, 553 U.S. at 660; *see also U.S. v. Eisen*, 974 F.2d 246, 254 (2d Cir. 1992) (Newman, J.) (court cannot "carve out" exception to RICO where "fraudulent scheme falls within the scope of the federal mail fraud statute and other elements of RICO are established").

        Contrary to Defendants' argument, the fact that a fraudulent scheme involving indictable mail and wire fraud has a litigation element does not insulate the scheme from RICO liability.  In *Eisen*, the Second Circuit concluded that, notwithstanding Congress's omission of perjury from the list of RICO predicate acts, conduct that met the statutory elements of mail fraud could form the basis of a RICO charge even if it entailed perjury—that is, submitting false testimony in the course of litigation: "[W]here, as here, a fraudulent scheme falls within the scope of the federal mail fraud statute and the other elements of RICO are established, use of the mail fraud offense as a RICO predicate act cannot be suspended simply because perjury is part of the means for perpetrating the fraud."  974 F.2d at 254.  The Second Circuit has also recognized outside the RICO context that mail and wire fraud may consist of fraudulent statements made during the course of litigation.  *See, e.g.*, *U.S. v. Rodolitz*, 786 F.2d 77, 83 (2d Cir. 1986) (sustaining mail fraud conviction based on predicate acts of fraudulent mailings during the course of civil suit against insurance company).  Plaintiffs here have alleged a broad scheme to defraud, executed through both non-litigation and litigation conduct (including the submission of false testimony to courts, as in *Eisen*) and through countless uses of the mails and wires.  There is no basis on which to carve out Plaintiffs' claims from RICO where the statutory elements are met.

Numerous courts in this Circuit and elsewhere have sustained RICO claims that, like Plaintiffs', allege predicate acts of mail and wire fraud committed in the course of litigation, where that litigation formed part of a larger scheme to defraud.   In *Sykes v. Mel Harris & Associates, LLC*, Judge Chin denied defendants' motion to dismiss plaintiffs' RICO claims based, like Plaintiffs' here, on defendants' scheme to extract property from consumers through a pattern of fraudulently obtained default judgments in thousands of collection actions.  757 F. Supp. 2d 413, 425 (S.D.N.Y. 2010).  Similarly, in *Angermeir v. Cohen*, defendants allegedly engaged in a scheme to defraud plaintiffs by suing them over bogus leases and securing default judgments on the basis of false documents; in furtherance of that fraudulent litigation, defendants used the mails (or caused their use) to send letters and legal documents to plaintiffs.  No. 12 Civ. 55, 2014 WL 1613016, at *2-3 (S.D.N.Y. Mar. 27, 2014).  Judge Karas denied defendants' motion to dismiss plaintiffs' RICO claim.  *Id.* at *11.  And in *Chevron Corp. v. Dozinger*, the court refused to dismiss a RICO claim premised on a scheme of extortion and mail fraud that involved bringing frivolous litigation, among other elements.  871 F. Supp. 2d 229, 249 (S.D.N.Y. 2012) (Kaplan, J.); *see also CSX Transp., Inc. v. Gilkison*, No. 05 Civ. 202, 2012 WL 1598081, *10-11 (N.D.W. Va. May 3, 2012) (filing fraudulent pleadings and related letters in numerous suits, where "integral part" of "complex scheme" by lawyer defendants to defraud plaintiff, constituted RICO predicate acts); *Warnock v. State Farm Mut. Auto. Ins. Co.*, No. 08 Civ. 01, 2008 WL 4594129, at *7-8 (S.D. Miss. Oct.14, 2008) ("transmit[ting] fraudulent pleadings and correspondence related to a scheme to file meritless lawsuits against the plaintiff" and others, where part of a "larger scheme to defraud multiple people," sufficient under RICO).

Notwithstanding these well-established standards, Defendants ask the Court to dismiss Plaintiffs' RICO claims on the basis of a supposed policy-based exception for "litigation

activities" as articulated in *Snyder v. U.S. Equities*, an unpublished and never-cited Western

District of New York decision.  2014 WL 317189, at *8-9.  The plaintiff there alleged that

defendants violated RICO when they fraudulently obtained a default judgment against her.  *Id.* at

*1-3.  The court dismissed the claim for plaintiff's failure to comply with applicable Western

District rules.  *Id.* at *6.  Despite that dispositive ground for dismissal, and despite the fact that

defendants' motion was unopposed, the court went on to state, in dicta, that it would also dismiss

the claim on the ground that mail and wire fraud to conduct "litigation activities" is

"insufficient" to establish predicate acts of racketeering.  *Id.* at *7-9.  As described above, such

an exception contravenes the RICO and mail and wire fraud statutes, and ignores Supreme Court

and Second Circuit precedent.

    The cases on which *Snyder* relied, as well additional cases Defendants cite in support of

their motion, are also legally and factually inapposite here.  Virtually all of those cases expressly

found, unlike here, that the plaintiffs *had not* actually pleaded the statutory elements of a RICO

claim.  *See, e.g.*, *Curtis & Assocs. P.C. v. Law Offices of David M. Busman, Esq.*, 758 F. Supp.

2d 153, 177 (E.D.N.Y. 2010) (failure to "identify any allegedly fraudulent or misleading

statements by defendants or to adequately plead the existence of an overall scheme to defraud"),

*aff'd*, 443 F. App'x 582 (2d Cir. 2011) (affirming solely on adequacy ground); *Weaver v. James*,

No. 10 Civ. 6609, 2011 WL 4472062, at *4 (S.D.N.Y. Sep. 27, 2011) (complaint "[did] not even

suggest the existence of at least two predicate mail or wire fraud acts"); *Daddona v. Gaudio*, 156

F. Supp. 2d 153, 161 (D. Conn. 2000) (plaintiffs gave "no explanation whatsoever as to any of

the circumstances surrounding" mail and wire fraud used in furtherance of defendants' scheme);

*DirectTV, Inc. v. Lewis*, No. 03 Civ. 6241, 2005 U.S. Dist LEXIS 8187, at *22 (W.D.N.Y. Apr.

29, 2005) ("Nothing [counterclaimant] has plead[ed] . . . suggests a scheme to defraud.").  Those

cases' suggestions of a "litigation activity" exception to RICO thus not only were dicta, but were unnecessary to keep inappropriate cases from flooding the courts.

Moreover, the RICO allegations in those cases were of a completely different nature than Plaintiffs' here.  The cases all presented essentially the same fact pattern: disgruntled litigants, unhappy that others sued them in one or a few allegedly frivolous proceedings, sued under RICO to redress what was essentially a malicious prosecution claim.  In *von Bulow v. von Bulow*, for example, the court denied leave to add a RICO claim based on predicate acts of malicious prosecution *per se*—that is, the plaintiff did not even allege mail or wire fraud—arising from supposed groundless suits brought by next friends of the plaintiff's wife.  657 F. Supp. 1134, 1145 (S.D.N.Y. 1987).  Similarly, in *Curtis*, the court dismissed a law firm's RICO claim against another firm arising from allegedly "phony" malpractice claims related to a fee dispute, because the allegations supporting the claim, which was "essentially" one for malicious prosecution, "*without more*, c[ould not] constitute a viable RICO predicate act."  *Curtis*, 758 F. Supp. 2d at 171 (emphasis added).  And in *Daddona*, after dismissing a *pro se* plaintiff's RICO claim against parties (and a federal judge) involved in litigation over the disputed division of marital assets for insufficiently pleading mail and wire fraud, the court also opined that the allegations were, "at best," "a vague abuse of process or malicious prosecution claim," which "do not, *on their own*, suffice" as RICO predicate acts.  *Daddona*, 156 F. Supp. 2d at 161-63 (emphasis added).  The other cases present more of the same.[8]

None of these cases involved allegations of a systematic fraud rather than an individualized dispute, sought relief for an injured class of persons rather than just individuals, or

---

[8] *See, e.g.*, *Nakahara v. Bal*, No. 97 Civ. 2027 (DLC), 1998 WL 35123, at *8 (S.D.N.Y. Jan. 30, 1998) (dismissing RICO claim based on allegations that defendants filed a false complaint to get plaintiffs' rights to the Empire State Building, since allegations "constitute[d] at most an incipient claim for malicious prosecution"); *DirectTV v. Lewis*, 2005 U.S. Dist LEXIS WL8187, at *22 (dismissing RICO counterclaim of individual sued for pirating cable based on supposed mail fraud in cable company's litigation against him).

alleged an ongoing and multifaceted conspiracy of which fraudulent litigation was merely an element.[9]  Instead, the parties sought to relitigate, through RICO, one-off disputes underlying earlier litigation.  In stark contrast, Plaintiffs here allege a massive scheme to defraud thousands of consumers to satisfy unsubstantiated debts, raising issues entirely independent of the specific disputes in the underlying state court litigations.

This Court should reject Defendants' argument that Plaintiffs' well-pleaded RICO claims should be dismissed simply because those claims include elements of litigation activity.

**B.      Plaintiffs' RICO Allegations Are Pleaded With Particularity.**

The Asta Defendants' argument that Plaintiffs' RICO claims against them must be dismissed for failure to plead with particularity is baseless.  (Asta Mem. 18-20.)  The Complaint is replete with specific allegations about the Asta Defendants' direction of, and involvement with, the massive scheme to defraud that forms the basis of Plaintiffs' RICO claims.

Where a RICO plaintiff claims that the mails or wires were used "in furtherance of a master plan to defraud," as opposed to alleging that specific statements or mailings were themselves fraudulent, the complaint satisfies Rule 9(b) where it contains "a detailed description of the underlying scheme and the connection therewith of the mail and/or wire communications." *In re Sumitomo Cooper Litig.*, 995 F. Supp. 451, 456 (S.D.N.Y. 1998); *see also Angermeir*, 2014 WL 1613016, at *7.  "Rule 9(b) requires only that the plaintiff delineate, with adequate particularity in the body of the complaint, the specific circumstances constituting the overall fraudulent scheme."  *Sumitomo*, 995 F. Supp. at 456.

According to Asta Defendants, Plaintiffs have alleged only that they engaged in "innocuous conduct" like "buying debt, retaining counsel, and obtaining judgments," and that

---

[9] Although *Snyder* itself was styled as a class action, it alleged concrete facts only about a single named plaintiff, unlike Plaintiffs' Complaint here.  *See* Compl. ¶¶ 16-76, *Snyder*, No. 12 Civ. 6092, Dkt. 1 (W.D.N.Y. Apr. 21, 2010).

they "developed and implemented" Pressler's litigation strategy.  (Asta Mem. 19-20.)  This

characterization is incorrect.  The Complaint describes a complex and comprehensive scheme *by*

*Asta Defendants* to purchase deeply discounted debts and convert those debts into collectable

consumer judgments worth millions of dollars.  Specifically, Asta Defendants devised the

scheme, purchased the debts (but not the documentation to substantiate them), retained Pressler

to collect on them, helped Pressler devise a litigation strategy, served as plaintiff in the suits

Pressler brought, furnished Pressler with perjurious affidavits—signed by Asta Defendants'

employees—to use in the litigation, and collected on the assets once Pressler successfully

obtained enforceable judgments.[10]  In other words, "buying debt, retaining counsel, and

obtaining judgments" was not "innocuous conduct" (Asta Mem. 20), but rather the precise means

by which Asta Defendants allegedly executed an unlawful scheme to defraud—and Asta

Defendants did much more than those things as well.  The Complaint alleges specific uses of the

mails and wires at the direction of, and in a manner foreseeable to, the Asta Defendants.

(Compl. ¶ 374(a)-(r).)

      Asta Defendants also contend, in a footnote, that the allegations against Defendant Stern

are "even more meager" than those against the corporate Asta Defendants, but the Complaint

alleges with particularity that the "legal strategy" that animated Defendants' debt collection

scheme was Stern's idea and that he "orchestrated, supervised, and monitored" it, among other

detailed allegations. (*See* Compl. ¶¶ 3, 43-44, 365; *see also id.* ¶¶ 2, 34-35, 359-60, 365.)

      Plaintiffs' Complaint bears no resemblance whatsoever to the "'paltry'" and

---

[10] *See* Compl. ¶¶ 2 (Asta devised and executed scheme), 3 (outline of Asta's scheme, including seizure of assets); 34-42 (Asta purchased AT&T debts with inadequate documentation), 43-46 (Asta developed "legal strategy"), 47-50 (Asta retained Pressler and together developed litigation strategy), 52, 54, 56, 58 (Palisades Collection was plaintiff in litigations), 61-62, 68 (Pressler filed suits at Asta's direction), 94, 97 (Pressler litigated at Asta's direction), 114-22 (Asta employees signed fraudulent affidavits); 176, 202-08, 240, 263-69, 304, 329-35 (Asta's involvement in litigation against named plaintiffs), 360, 363-65 (delineating Asta Defendants' roles in enterprise).

"'conclusory'" claims dismissed in the cases on which Asta Defendants rely in support of their motion. (Asta Mem. 20.) The Complaints' detailed and copious allegations against the three Asta Defendants are more than sufficient to "inform [them] of the nature of [their] alleged participation in the fraud." *Angermeir*, 2014 WL 1613016, at *8; *see also Sumitomo*, 995 F. Supp. at 456.[11]

### C.     Plaintiffs Have Pleaded That Defendants Formed An Unlawful Enterprise.

Asta Defendants' motion to dismiss Plaintiffs' RICO claims for failure to plead the existence of a RICO enterprise contains literally no content apart from the bare assertion of insufficiency. (*See* Asta Mem. 21-22 (describing cases but saying nothing regarding Plaintiffs' allegations).)

In any event, the Complaint more than adequately pleads the existence of a RICO enterprise by alleging (1) the enterprise's purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose. *See Boyle v U.S.,* 556 U.S. 938, 946 (2009). Plaintiffs allege that the enterprise's purpose was to purchase debts and then collect on them by fraudulently filing and pursuing debt collection actions (Compl. ¶ 360); that the roles of each participant were as described in detail above (*see supra* Section II.B); and that the enterprise engaged for at least eight years in unlawful activity of the type described in the Complaint (Compl. ¶¶ 362, 373(a)-(b), 374(g), (h), (p), (q); 373(f), 374(i)-(n).) These allegations are more than sufficient. *See, e.g.*, *Hemmerdinger Corp. v. Ruocco*, 976 F. Supp. 2d 401, 414 (E.D.N.Y. 2013). As the Complaint is a far cry from a "'conclusory pleading'" (Asta Mem. 21), Defendants' motion should be denied.

---

[11] It is not clear whether Pressler Defendants join Asta Defendants' motion to dismiss for failure to plead with particularity. (*See* Pressler Joinder.) Such an argument would be entirely frivolous, as the specific allegations against Pressler & Pressler and the individual Pressler Defendants are detailed and extensive. *See* Compl. ¶¶ 1, 43-155, 175, 177-81, 214-15, 217, 219-20, 199, 222, 225, 239-44, 260, 278-80, 283-84, 286-88, 290, 326, 366-69, 373(a)-(f), 374(a)-(r).

## III.   MR. MILLIEN'S AND MS. PORTER'S FDCPA CLAIMS ARE TIMELY.

Defendants seek to dismiss the FDCPA claims of Plaintiffs Millien and Porter as barred by that law's one-year statute of limitations, but Defendants ignore that both Plaintiffs have alleged FDCPA violations that occurred within the year prior to filing.  An FDCPA claim is timely where the date of the *last alleged* FDCPA violation falls within the statutory period.  *See Kapsis v. Am. Home Mortgage Servicing Inc.*, 923 F. Supp. 2d 430, 443 (E.D.N.Y. 2013); *see also Padilla v. Payco Gen. Am. Credits, Inc.,* 161 F. Supp. 2d 264, 273 (S.D.N.Y. 2001) (statute of limitations intended to "ensur[e] that the action is filed within one year of the *most recent date* on which the defendant is alleged to have violated the FDCPA" (emphasis added)).

Both Mr. Millien and Ms. Porter allege FDCPA violations that occurred within one year of the filing of *Bernhart*, in which they were members of the proposed class, on May 1, 2013.[12] Specifically, these Plaintiffs have alleged that:

- Defendants filed false and deceptive affirmations in opposition to orders to show cause seeking to vacate default judgments on April 9, 2013 (Millien) and in December 2013 (Porter) (*see* Compl. ¶¶ 141, 278-84, 341, 354(g));

- Defendants took actions to execute judgments with insufficient care and on the basis of fraudulently obtained default judgments on March 25, 2013, and March 29, 2013 (Millien), and June or July 2013 (Porter) (*see id.* ¶¶ 130–36, 234, 272, 276, 278, 298, 354(h));

- Defendants unlawfully retained funds obtained through execution of judgments beginning on March 25, 2013 (Millien), and in June or July 2013 (Porter) (*see id.* ¶¶ 143, 293, 347, 354(i)); and

- Defendants engaged in harassing, oppressive, and abusive litigation conduct on April 22, 2013, and July 3, 2013 (Millien), and November 14, 2013 and December 20, 2014 (Porter) (*see id.* ¶¶ 144–49, 286, 290, 340-43, 354(j)).

---

[12] Plaintiffs are entitled to tolling under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), during the pendency of *Bernhart* (from May 1, 2013 to March 24, 2014), though each Plaintiff has pleaded violations that also fall within the year prior to filing the instant action.

26

These allegations present cognizable, timely FDCPA claims. *See, e.g.*, *Heintz v. Jenkins*, 514 U.S. 291, 294-95 (1995) (FDCPA applies to deceptive litigation activities of debt-collection lawyers); *Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 522, 530 (S.D.N.Y. 2013) ("unfair" or "unconscionable" garnishment and restraint of seized money violate § 1692f); *Polanco v. NCO Portfolio Mgmt.*, 930 F. Supp. 2d 547, 552 (S.D.N.Y. 2013) (actions to enforce fraudulently obtained default judgment violate FDCPA); *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 228-29 (4th Cir. 2007) (unfair or deceptive litigation conduct violates FDCPA); *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 952 (9th Cir. 2011) (same). Because these allegations are unquestionably timely, Defendants' motion must be denied. *See Schuh v. Druckman & Sinel LLP*, 602 F. Supp. 2d 454, 466 (S.D.N.Y. 2009) (FDCPA claims based on efforts to collect on judgment within limitations period not time-barred though underlying action outside period); *Judy v. Blatt, Hasenmiller, Leibsker, & Moore, LLC*, No. 09 Civ. 1226, 2010 U.S. Dist. LEXIS 8027, at *15 (N.D. Ill. Jan. 29, 2010) (same for court appearances to defend meritless action within limitations period).

Even with respect to additional FDCPA violations that the Complaint alleges took place earlier than one year before filing, Plaintiffs are entitled to equitable tolling. The FDCPA's statute of limitations may be equitably tolled if "(1) defendant concealed the existence of plaintiffs' cause of action; (2) plaintiffs remained ignorant of that cause of action until some point within the limitations period; and (3) plaintiffs' continuing ignorance was not due to lack of diligence." *Coble v. Cohen & Slamowitz, LLP*, 824 F. Supp. 2d 568, 571 (S.D.N.Y. 2011).

Mr. Millien and Ms. Porter have both alleged that they remained ignorant of Defendants' earlier FDCPA violations until within the limitations period, and have alleged that Defendants took actions throughout the state court proceedings to conceal their misconduct. (*See* Compl. ¶¶

27

3, 81-103, 234, 298.)  These allegations, which entitle Plaintiffs to equitable tolling, must be taken as true; a motion to dismiss on statute of limitations grounds may only be granted where untimeliness is apparent on the face of the complaint.  *Schuh*, 602 F. Supp. 2d at 466.  Courts "should not . . . resolve[] . . . fact-specific equitable tolling issue[s] on defendants' motion to dismiss."  *Mandarino v. Mandarino*, 180 F. App'x 258, 261 (2d Cir. 2006); *see also Doe v. Selsky*, 948 F. Supp. 2d 306, 310 (W.D.N.Y. 2013) (similar).  Plaintiffs' claims thus cannot be dismissed on the basis of extrinsic evidence like that which Defendants have submitted here.  (*See* Pressler Mem. 9-12 & Exs. E-H.)  The court may only resolve disputed issues of fact bearing on equitable tolling after discovery and after Plaintiffs have had an opportunity to proffer their own relevant evidence.  *See, e.g., Upadhyay v. Sethi*, 848 F. Supp. 2d 439, 447 (S.D.N.Y. 2012).

Defendants have also moved to dismiss Ms. Porter's claims under RICO, the GBL, and the Judiciary Law as time-barred.  Because Ms. Porter has alleged violations of those statutes within the applicable limitations periods (all of which are longer than the FDCPA's), and because the face of the Complaint supports equitable tolling with regard to earlier violations under those statutes as well, this motion must also be denied.

## IV.   PLAINTIFFS HAVE STATED A CLAIM UNDER GBL § 349 FOR DECEPTIVE, CONSUMER-ORIENTED MISCONDUCT.

Defendants' motion to dismiss Plaintiffs' claim under the New York GBL also fails.  Plaintiffs' allegations that Defendants engaged in a scheme to defraud thousands of New York consumers through fraudulent and deceptive debt collection practices easily state a cause of action under the GBL.

First, Defendants argue that the conduct described in the Complaint does not violate the GBL because it does not "harm . . . the public interest."  (Pressler Mem. 13-14.)  But courts

28

repeatedly have held that a "routine" deceptive business practice affecting many similarly situated consumers is inherently consumer-oriented conduct that harms the public interest and thus violates the statute.  *See, e.g.*, *New York v. Feldman*, 210 F. Supp. 2d 294, 301 (S.D.N.Y. 2002); *Kapsis*, 923 F. Supp. 2d at 450.  Here, Plaintiffs have alleged that Defendants' unlawful scheme to collect AT&T Wireless debts was "directed not just at [them], but also at a large class of similarly situated" consumers.  *Kapsis*, 923 F. Supp. 2d at 450.  (*See* Compl. ¶¶ 3, 51-60, 156-58.)  Because Defendants' conduct thus had a "broad[] impact on consumers at large," it violated the GBL.  *Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y. 2d 330, 343-44 (1999); *see also Wilner v. Allstate Ins. Co*., 893 N.Y.S.2d 208, 215-16 (2d Dep't 2010) (similar).[13]

Defendants also contend that Plaintiffs could sustain a GBL claim only by alleging that they directly received Pressler's deceptive communications or that they "paid anything to Pressler . . . as a result" of such communications.  (Pressler Mem. 14-17.)  The New York Court of Appeals has repeatedly held, however, that "reliance is not an element of a section 349 claim." *Stutman v. Chem. Bank*, 95. N.Y.2d 24, 29 (2000).  Plaintiffs need not even allege that they "saw or heard each" allegedly deceptive statement.  *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F. Supp. 2d 439, 445-46.[14]

Courts and the New York Attorney General have found explicitly that conduct like that

---

[13] By contrast, the cases Defendants cite (Pressler Mem. 13-14) stand primarily for the proposition that disputes over purely private transactions are outside the statute's scope.  *See Marizio v. Goldsmith*, 230 F.3d 518, 522(2d Cir. 2000) (plaintiff's claim of co-authorship was "private, unique to [the parties] . . . and without direct impact on . . . consumers"); *Lautman v. 2800 Coyle St. Owners Corp*, No. 13 Civ. 967, 2014 WL 2200909 (E.D.N.Y. May 23, 2014) (plaintiff's action against landlord for conduct affecting him alone not consumer-oriented); *Tasini v. AOL, Inc.*, 851 F. Supp. 2d 734, 742 (relationship between media outlets and their contributors did not broadly affect consumers).

[14] The Consumer Financial Protection Bureau and Federal Trade Commission have recently articulated their official position that the FDCPA, the federal analog to the GBL, unquestionably proscribes misrepresentations directed to third parties.  Brief for the Consumer Financial Protection Bureau and Federal Trade Commission as Amici Curiae Supporting Plaintiffs-Appellees, *Sykes v. Mel Harris*, No. 13-2742-cv, ECF No. 69 at 10-17 (2d Cir. Nov. 13, 2013). Courts' interpretations of the GBL are informed by the FDCPA, *see, e.g.*, *Midland Funding, LLC v. Giraldo*, 961 N.Y.S.2d 743, 753 (Nassau County Ct. 2013), and the GBL's language is particularly broad, *see, e.g.*, *Gaidon v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201, 210 (2001).

alleged here—namely, a pattern of bringing deceptive debt collection lawsuits and making the

misrepresentations involved in litigating such suits—violates the GBL.  In *Midland Funding,*

*LLC v. Giraldo*, the court held that allegations of a debt collector's "routine filing of assigned

debt lawsuits . . . despite a lack of crucial, legally admissible information or sufficient inquiry

into whether the claims are meritorious" were "plainly sufficient" under § 349.  961 N.Y.S.2d

743, 751 (Nassau County Ct. 2013).  Similarly, in *Fritz v. Resurgent Capital Services*, the court

found a debt buyer's practice of filing misleading collection suits stated a claim under the GBL

because the "crux of [plaintiffs'] claim is that those practices were a normal part of defendants'

business, which involved hundreds of thousands of dollars in consumer debt" and thus had "a

broad impact on consumers at large."  955 F. Supp. 2d 163, 173-74 (E.D.N.Y. 2013); *see also*

*Sykes*, 757 F. Supp. 2d at 428 (upholding GBL claim based on debt buyer's widespread practice

of suing consumers on the basis of fraudulent affidavits).  The New York Attorney General

recently brought and settled enforcement actions against two debt buyers under the GBL, among

other statutes, for filing thousands of improper state court debt collection lawsuits.[15]  Particularly

in light of the mandate to construe the GBL "liberally," *Feldman*, 210 F. Supp. 2d at 301, this

Court should reject Defendants' motion to dismiss Plaintiffs' GBL claim.

## V.   THE COURT SHOULD DENY DEFENDANTS' MOTION TO DISMISS THE INDIVIDUAL DEFENDANTS.

Defendants incorrectly claim that Plaintiffs cannot sue the individual Pressler defendants

despite allegations of their specific roles in the misconduct that forms the basis of this suit.

(Pressler Mem. 17-18.)  The GBL and the FDCPA both permit individual liability in

---

[15] *See* Assurance of Discontinuance, *In re Investigation by Eric T. Schneiderman, Attorney General of New York, of Sherman Financial Group* (Assurance No. 13-444) (Oct. 23, 2013), *available at* http://nylawyer.nylj.com/adgifs/decisions14/050914sherman.pdf; Assurance of Discontinuance, *In re Investigation by Eric T. Schneiderman, Attorney General of New York, of Portfolio Recovery Assocs., LLC* (Assurance No. 14-108) (May 1, 2014) ¶¶ 18-24, 26, *available at* http://nylawyer.nylj.com/adgifs/decisions14/050914portfolio.pdf.

circumstances like those alleged here.

The Complaint specifically describes the actions of the individual Pressler defendants in, for example, falsely verifying and filing complaints without sufficient review (*see* Compl. ¶¶ 175-181 (Franklin), 239-244 (Wang)); signing and submitting fraudulent applications for default judgments (*see id.* ¶¶ 199-201 (Franklin)); and filing fraudulent oppositions to orders to show cause and engaging in harassing litigation practices (*see id.* ¶¶ 141, 144-148, 151 214-220, 278-284 (Zipkin), 144-148, 151, 222-226, 286-287 (Stiller)).[16]

These allegations more than suffice to sustain individual liability under the GBL.  A corporate employee who himself "participates in" conduct that violates the GBL, "even if it is in the course of his duties," may be held individually liable.  *Nat'l Survival Game, Inc. v. Skirmish, U.S.A., Inc*, 603 F. Supp. 339, 341 (S.D.N.Y. 1985); *see also Bano v. Union Carbide Corp.*, 273 F.3d 120, 133 (2d Cir. 2001) (stating general principle of New York law).  Unlike the plaintiffs in the cases Defendants cite, Plaintiffs here are *not* seeking to hold employees with no specific role in the violations liable simply by virtue of their employment.  *See, e.g.*, *Wright v. Shapiro*, 16 A.D.3d 1042, 1043 (N.Y. App. Div. 2005) (no liability where employee did not commit, and lacked "control or authority" over, misconduct); *Beskow v. Halow*, 228 N.Y.S. 414, 420 (1st Dep't 1928) (no liability where "nothing more than employment and services").

Similarly, the plain language of the FDCPA extends liability to any "person" who violates the Act.  18 U.S.C. § 1692a(6).  Courts repeatedly have held that employees of "debt collectors" (a statutory term including debt collection law firms) can be held individually liable where their own conduct violates the FDCPA.  In *Clomon v. Jackson*, for example, the Second Circuit held that an attorney "employed on a part-time basis as general counsel for a debt

---

[16] While it is not clear whether Asta Defendants make a similar motion to dismiss the GBL and FDCPA claims against Stern, the Complaint also alleges his specific involvement in the unlawful conduct.  (*See, e.g.*, Compl. ¶¶ 3, 43-44, 365; *see also id.* ¶¶ 2, 3, 34-35, 359-60, 365.)

collection agency" was liable for his own actions in violation of the FDCPA.  988 F.2d 1314, 1316, 1323 (2d Cir. 1993); *see also Krapf v. Prof'l Collection Servs., Inc.*, 525 F. Supp. 2d 324, 327-28 (E.D.N.Y. 2007) (debt collection agency employees individually liable where they "personally engaged in" prohibited conduct); *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 369 F. Supp. 2d 353 (E.D.N.Y. 2005) (individuals personally involved in collection of debts liable); *Ohlson v. Cadle Co., Inc.*,  No. 04 Civ. 3418, 2006 WL 721505 (E.D.N.Y. Mar. 21, 2006) (employees of debt collecting agency liable "where they have affirmatively acted").  There is thus no basis on which to dismiss any claims against the individual Defendants.

## VI.    PLAINTIFFS HAVE ADEQUATELY PLEADED DAMAGES.

Finally, Defendants seek to dismiss Plaintiffs' RICO, GBL, and Judiciary Law claims, as well as all of Plaintiff Mayfield's claims, for Plaintiffs' supposed failure to adequately plead damages.  But the Complaint describes injuries sustained by each Plaintiff that are more than sufficient to meet the relevant statutory standards.

Specifically, the Complaint alleges that Defendants wrongfully seized Plaintiffs' personal funds through wage garnishment in satisfaction of fraudulently obtained judgments (*see* Compl. ¶¶ 155 (class), 234, 274, 294 (Millien), 298, 347-48 (Porter)); impaired Plaintiffs' credit history and caused the denial of specific credit opportunities (*see id.* ¶¶ 155 (class), 169, 231 (Mayfield)); forced them to lose work-related benefits like personal and vacation days (*see id.* ¶¶ 155 (class), 230 (Mayfield), 295 (Millien); caused stress and emotional distress (*see id.* ¶¶ 155 (class), 223, 232 (Mayfield), 287, 296 (Millien), 250 (Porter)); and required them to travel repeatedly to and from court and mail court-related documents, which resulted in transportation and mailing costs (*id.* ¶¶ 155 (class), 229 (Mayfield), ¶ 277, 295 (Millien), 339, 349 (Porter)).

These damages constitute "injury to business or property" sufficient to sustain a RICO claim.  18 U.S.C. § 1962(c).  Defendants' wrongful appropriation of Mr. Millien's and Ms.

Porter's wages is straightforwardly injury to property within the meaning of § 1962(c). *See, e.g.,* *Clark v. Conahan*, 737 F. Supp. 2d 239, 255 (M.D. Pa. 2010) ("injury to property in the form of . . . wages that were garnished" is cognizable under RICO). Moreover, out-of-pocket expenses incurred in defending lawsuits, even if small in value, constitute injury to business or property. *See Angermeir*, 2014 WL 1613016, at *13 (fees in defending fraudulent lawsuits); *Sykes*, 757 F. Supp. 2d at 427-28 (costs incurred to "challenge . . . default judgments"); *Cnty. of Ulster, N.Y. v. Ulloa*, No. 10-CV-467, 2011 WL 777962, at *1, 5 (N.D.N.Y. Mar. 1, 2011) ("expenditure of funds" in responding to fraudulent legal proceedings); *Curley v. Cumberland Farms Dairy, Inc*., 728 F. Supp. 1123, 1140 (D.N.J. 1989) (travel expenses). Negative impacts on credit histories and resulting denial of specific credit opportunities also constitute an injury to property under RICO. *See Cnty. of Ulster*, 2011 WL 777962, at *1, 5.

These damages also more than suffice under the GBL, which permits plaintiffs to plead either pecuniary or non-pecuniary actual damages. *See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 623 N.Y.S.2d 529, 533 (1995). "[C]osts reasonably incurred in the course of defending against [a deceptive] lawsuit" are "more than adequate" to plead a claim for damages under §349. *Giraldo*, 961 N.Y.S.2d at 755; *see also Fritz*, 955 F. Supp. 2d at 174 ("time spent" defending such suits also satisfies GBL); *Beslity v. Manhattan Honda, a Div. of Dah Chong Hong Trading Corp.*, 467 N.Y.S. 2d 471, 475 (N.Y. Sup. Ct. 1983) (travel expenses).

Courts have also recognized that psychological harms like anxiety, emotional distress, frustration, and humiliation are non-pecuniary harms sufficient to support a GBL claim. *See, e.g.*, *Griffin-Amiel v. Frank Terris Orchestras*, 677 N.Y.S.2d 908, 912 (Yonkers City Ct. 1998); *Wood v. Capital One Servs.*, 718 F. Supp. 2d 286, 292 (N.D.N.Y. 2010); *Rozier v. Fin. Recovery*

*Sys., Inc.*, No. 10–CV–3273, 2011 WL 2295116, at *5 (E.D.N.Y.  June 7, 2011).  Damage to credit also arguably causes injury cognizable under the GBL.  *Cf. Nelson v. Equifax Info. Servs.*, LLC, 522 F. Supp. 2d 1222, 1234-35 (C.D. Cal 2007) (damage to credit sufficient under FDCPA).

The injuries alleged in the Complaint are also sufficient to sustain a claim under the Judiciary Law, which in broad terms grants a cause of action to any party "injured" by deceptive practices.  *See* Jud. Law § 487; *see also Amalfitano v. Rosenberg*, 12 N.Y.3d 8, 14 (2009) (expenses incurred in defending deceptive lawsuit suffice to allege damage).

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that Defendants' motions be denied.  If, however, the Court grants any of Defendants' motions to dismiss, Plaintiffs respectfully request leave to replead the affected claims.

Dated: New York, New York
       August 8, 2014

                                   Respectfully Submitted,

                                   **NEW YORK LEGAL ASSISTANCE GROUP**
                                   **YISROEL SCHULMAN, ESQ.**

                                   By: _____
                                       Jane Greengold Stevens, of counsel
                                       Danielle Tarantolo, of counsel
                                       Julia Russell, of counsel
                                   7 Hanover Square, 18th Floor
                                   New York, NY 10004
                                   Telephone: (212) 613-5000
                                   Facsimile: (212) 750-0820
                                   Email: jstevens@nylag.org
                                   Email: dtarantolo@nylag.org
                                   Email: jrussell@nylag.org

                                   **HUGHES HUBBARD & REED LLP**

                                   By: _____
                                       Diane E. Lifton
                                       Shannon F. Green
                                       Meaghan C. Gragg
                                   One Battery Park Plaza
                                   New York, New York 10004
                                   Telephone: (212) 837-6000
                                   Facsimile: (212) 422-4726
                                   Email: lifton@hugheshubbard.com
                                   Email: greens@hugheshubbard.com
                                   Email: gragg@hugheshubbard.com

                                   *Attorneys for Plaintiffs*