UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



------------------------------------------------------------------X

CHARLETTE MAYFIELD, CLAUDE MILLIEN, and
EBONY PORTER, individually and on behalf of all
persons similarly situated,

                                    Plaintiffs,


            -against-                                      14-CV-2591

                                                    **OPINION & ORDER**


ASTA FUNDING, INC., ASTA JOHN/JANE DOES 1-20,
PALISADES COLLECTION, LLC, GARY STERN,
PALISADES COLLECTION JOHN/JANE DOES 1-20,
PRESSLER & PRESSLER, LLP, RICHARD A. FRANKLIN,
TIN-AN- A. WANG, MITCHELL E. ZIPKIN,
CRAIG STILLER, and PRESSLER JOHN/JANE DOES 1-20,
                                    Defendants.
------------------------------------------------------------------X

**LORETTA A. PRESKA, Chief U.S.D.J.**

## I.    INTRODUCTION

Plaintiffs Mayfield, Millien and Porter bring this action alleging that a debt-buying

company, a law firm and associated individuals orchestrated a scheme fraudulently to obtain and

enforce consumer debt judgments against them and thousands of similarly situated individuals in

state court.  Plaintiffs allege that Defendants brought consumer debt lawsuits against them

without sufficient evidence to prove the debt, filed fraudulent affidavits in support of their

claims, and engaged in "sewer service" so that Plaintiffs never received notice of the suits. When

Plaintiffs failed to appear in court, Defendants obtained and enforced default judgments.

Plaintiffs sue on behalf of themselves and all others similarly situated, asserting claims

under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1601, the Racketeer

Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1691, New York General

Business Law ("GBL") § 349, and New York Judiciary Law § 487.  Plaintiffs seek damages, injunctive relief and declaratory relief.

Defendants move to compel arbitration, strike class action allegations and dismiss various claims in the Complaint.  For the reasons that follow, all of Defendants' motions are denied.

## II.     BACKGROUND

The allegations in the Complaint are assumed to be true for the purposes of the motion to dismiss and are as follows:

### A.  The Parties

Plaintiffs Charlette Mayfield, Claude Millien and Ebony Porter (collectively, "Plaintiffs") allege that Defendants conspired fraudulently to obtain and enforce consumer debt judgments against them.  (Compl. ¶¶ 3-4.)  Between 2005 and 2007, each named Plaintiff was sued by Defendants in New York City Civil Court to collect on alleged defaulted AT&T Wireless accounts.  (Id. ¶¶ 171, 173, 235, 237, 299, 301.)  Mayfield and Millien never had accounts with AT&T Wireless, and Porter did not owe any money to AT&T Wireless.  (Id. ¶¶ 185, 248, 298, 312.)

None of the named Plaintiffs was notified of the actions until years after default judgments were entered against them.  (Id. ¶¶ 169-171, 195, 211, 234-35, 256, 298-99, 322.)  Millien and Porter only became aware of the judgments in 2013 when they learned their employers were garnishing their wages.  (Id. ¶¶ 234, 298.)  Plaintiffs bring this class action on behalf of all victims and potential victims of the alleged scheme—that is, all those who have been sued or may be sued by Defendants in New York City Civil Court to collect alleged AT&T Wireless debts.  (Id. ¶ 156.)

2

Defendants are a debt-buying company, a law firm that specializes in debt collection, and individuals affiliated with the scheme alleged in the Complaint.

Defendants Asta Funding, Inc. ("Asta"), and Palisades Collection, LLC ("Palisades"), a wholly-owned subsidiary of Asta, are in the business of purchasing and collecting defaulted consumer debts. (Id. ¶¶ 2, 10-12.) Asta and Palisades are led by Defendant Gary Stern ("Stern"), President, CEO and Chairman of the Board of Asta. (Id. ¶¶ 2, 13.) Together, along with affiliated individuals, they comprise the "Asta Defendants." (Id. ¶¶ 10-13.)

Defendants Pressler & Pressler, LLP ("Pressler") is a law firm regularly engaged in the business of collecting consumer debts on behalf of its clients, including Asta Defendants. (Id. ¶¶ 2, 17.) Defendants Richard A. Franklin, Tin-an A. Wang, Mitchell E. Zipkin and Craig Stiller are attorneys who were at relevant times employed at Pressler and personally engaged in the business of collecting consumer debts on behalf of Asta Defendants. (Id. ¶¶ 18-21.) Along with affiliated individuals, they comprise the "Pressler Defendants." (Id. ¶¶ 17-24.)

### B. The Alleged Scheme

Debt buyers purchase deeply discounted, defaulted debts and then seek to collect the full face value for profit.[1] (Compl. ¶ 25.) Asta is one of the nation's largest debt buyers. (Id.) Plaintiffs allege that Defendants purchased consumer debt portfolios for pennies on the dollar and then devised and implemented a scheme to collect millions from alleged debtors by fraudulently obtaining default judgments against them. (Id. ¶ 3.)

---

[1] In 2013, the Federal Trade Commission reported its concern with the growth of the debt-buying industry. (Compl. ¶ 32.) "[D]ebt buyers[] may have insufficient or inaccurate information when they collect on debts, which may result in collectors seeking to recover from the wrong consumer or recover the wrong amount." (Id.) "[T]he sufficiency and accuracy of the information used in the collection of debts remains a significant consumer protection concern." (Id.)

3

In July 2004, Asta Defendants entered into an agreement to batch purchase charged-off debt from AT&T Wireless. (Id. ¶¶ 34-35.) For debts purchased under this agreement, Asta Defendants received a spreadsheet, known in the industry as a "stream of data," containing limited information about each alleged account—including the account holder's name, social security number, telephone number, address, account open date, last payment date, charge-off date, and alleged amount owed. (Id. ¶ 38.) Although they had the opportunity to do so, Asta Defendants generally did not purchase or otherwise obtain the original documentation confirming the indebtedness of the alleged account holders. (Id. ¶¶ 40-42) Plaintiffs allege that Defendants did not have the evidence necessary to verify debts or to prove their claims against alleged account holders. (Id. ¶¶ 3, 77-79, 120-21, 124-25.)

Asta Defendants, through their attorneys at Pressler, devised a strategy to collect on the unsubstantiated debts. Pressler, on behalf of Palisades, filed tens of thousands of mass-generated "verified complaints" against the alleged debtors in New York City Civil Court. (Id. ¶ 63.) All told, Pressler and Palisades filed nearly 60,000 suits between 2005 and 2007. (Id. ¶ 158.) The same week they sued Plaintiff Mayfield, Defendants sued over 1,200 others in New York City. (Id. ¶ 172.) Defendants supported these actions with fraudulent Affidavits of Fact, signed by employees of Palisades, attesting to their "personal knowledge" of facts and circumstances surrounding the alleged debt when in fact they did not have access to documents substantiating the debt. (Id. ¶¶ 114-22.) Pressler Defendants also swore they were "in possession of the salient papers in connection with the action" and had verified the information in the complaint. (Id. ¶¶ 71-79.)

The vast majority of alleged debtors did not appear in court to defend themselves because they never received notice of the actions against them. (Id. ¶¶ 92-94.) Pressler retained process

serving agencies known to engage in "sewer service"—filing fraudulent affidavits of service where no service had been made. (Id. ¶¶ 81-84, 91-104.) In 2007, only 6% of those sued by Pressler appeared in court. (Id. ¶ 92.) When alleged debtors failed to appear, the court issued default judgments against them. (Id. ¶¶ 103-04, 127.)

After securing default judgments, Defendants proceeded to garnish Plaintiffs' wages, restrain their bank accounts, and impair their credit histories, resulting in the denial of specific credit opportunities including mortgages for their homes. (Id. ¶ 130, 169, 229-32, 293-96, 348-50.) Plaintiffs incurred litigation costs and suffered emotional distress on account of the fraudulent suits. (Id.) Defendants harassed and aggressively opposed those who sought to vacate the improperly obtained judgments. (Id. ¶¶ 214-20; 222-23; 225-26; 228; 278-84; 286-93; 340-43; 347.) If an alleged debtor succeeded in having the judgment vacated and insisted on proceeding to trial, Defendants would either admit that they were unprepared for trial or press for a settlement. (Id. ¶¶ 149-53, 228, 292.)

### C. Procedural History

This is a successor action to Bernhart v. Asta Funding, Inc., 13 Civ. 2935 (RPP), which alleged the same scheme by Asta and Pressler Defendants as the instant Complaint. After Judge Robert P. Patterson, Jr. denied Defendants' motions to compel arbitration, to dismiss, and for related relief, the four named plaintiffs and Defendants reached a settlement, and Bernhart was dismissed without prejudice to claims on behalf of the putative class. Plaintiffs Mayfield, Millien and Porter were members of the putative class in Bernhart. They filed this action on April 11, 2014 on behalf of themselves and similarly situated individuals.

On July 7, 2014, Asta Defendants filed a motion to compel arbitration and for related relief. (Mem. in Supp. of Mot. to Compel Arbitration ("Asta Mem."), ECF No. 30.) On July 8,

2014, Pressler Defendants filed a partial motion to dismiss. (Partial Mot. to Dismiss ("Pressler Mem."), ECF No. 35.) Plaintiffs filed a memorandum in opposition to both Defendants' motions on August 8, 2014, (Mem. in Opp'n ("Opp'n Mem."), ECF No. 39), and Defendants replied on August 15, 2014. (See Pressler Reply Mem. in Supp. of Partial Mot. to Dismiss ("Pressler Reply"), ECF No. 41); (Reply Mem. in Supp. of Mot. to Compel Arbitration ("Asta Reply"), ECF No. 42.) Argument was held on the motions before Judge Robert P. Patterson, Jr. on October 30, 2014.

## III.   DISCUSSION

Defendants move to compel arbitration, strike class action allegations, and dismiss the RICO, FDCPA, and state law claims.[2] Each of these motions will be addressed in turn.

### A. Motion to Compel Arbitration

"Arbitration is a matter of contract." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) (internal citation and quotation marks omitted). Although the Federal Arbitration Act ("FAA") promotes a "liberal federal policy favoring arbitration agreements" and "establishes that . . . any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983), "the purpose of Congress [in enacting the FAA] was to make arbitration agreements as enforceable as other contracts, but not more so." Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 n.12 (1967). "[T]he law . . . requires that parties actually agree to arbitration before it will order them to arbitrate a dispute." Opals on Ice Lingerie v. Bodylines

---

[2] In addition to the arguments addressed below, Pressler Defendants moved to dismiss the FDCPA claims, and all claims as to Plaintiff Porter, on the theory that they are time-barred by statutes of limitations. (Pressler Mem. at 9-13.) However, Defendants withdrew these motions at oral argument on October 30, 2014. (Tr. of Oral Arg., at 50-51, ECF No. 44.)

Inc., 320 F.3d 362, 369 (2d Cir. 2003).  Consequently, the party seeking to compel arbitration bears the burden of establishing that a binding agreement to arbitrate was formed.  Dreyfuss v. eTelecare Global Solutions-U.S. Inc., 349 F. App'x 551, 555 (2d Cir. 2009).  If it fails to "make a prima facie initial showing that an agreement to arbitrate existed," the motion to compel arbitration must be denied.  Hines v. Overstock.com, Inc., 380 F. App'x 22, 24 (2d Cir. 2010).

In Bernhart, Judge Patterson denied Defendants' nearly identical motion on two grounds. (Order, Bernhart ("Bernhart Denial Order") at 1, Dec. 16, 2013, ECF No. 63.)  First, the Court held that Defendants failed to meet their burden because they "ha[d] not identified the arbitration agreements that mandate arbitration" for the named Plaintiffs.  (Tr. of Oral Arg., Bernhart ("Bernhart Tr.") at 47:15-17, Dec. 12, 2013, ECF No. 60.)  Defendants did not produce any contracts between any Plaintiff and any Defendant or between any Plaintiffs and AT&T Wireless.  (Bernhart Tr. at 4:3-6.)  Instead, Defendants offered only sample contracts between non-parties and AT&T Wireless and asked the Court to infer that Plaintiffs were bound by similar clauses.  (Asta Mem. in Supp. of Mot. to Compel, Bernhart, at 3-4, ECF No. 28; Decl. of Karen F. Lederer, Exs. 1-4, Sept. 4, 2013.)  Judge Patterson concluded that "Defendants failed to establish that a binding agreement was made between any of the Plaintiffs and any of the Defendants requiring arbitration."  (Bernhart Denial Order at 1.)  Second, even if the named Plaintiffs had entered into agreements similar to the samples presented by Defendants, Judge Patterson found that the arbitration clause in the sample agreements clearly provides an exception for claims relating to debt collection.  (Id. at 2; "[Y]ou or we may choose to pursue claims in court if the claims relate solely to the collection of any debts you owe us.")  The Court held that this provision "would allow the Plaintiffs to bring this putative class action in a court of

law because the Plaintiffs' action relates solely to the Defendants' debt collection practices." (Id.)

Defendants' motion to compel arbitration fails for the same reasons today. After Bernhart, Defendants subpoenaed AT&T. Far from producing Plaintiffs' alleged contracts, known as "Welcome Guides," "[i]n response, an AT&T representative attested that . . . AT&T has destroyed all Welcome Guides and customer records from 2001 and 2002," the years the named Plaintiffs allegedly opened accounts with AT&T. (Asta Mem. at 2.) Lacking the contracts at issue in this case, Defendants submit eighteen sample contracts between non-parties and AT&T Wireless. Defendants' submission is supplemented only by a declaration from an AT&T employee, Mr. Don Van Hise, who attests that Welcome Guides from 2001-2002 "governed the contractual relationship between AT&T . . . and its customers" and contained a provision requiring customers to bring disputes against AT&T or its assignees through arbitration. (Asta Mem. at 2; Van Hise Decl. ¶¶ 2-4.) Notably, Mr. Van Hise's declaration never descends from this level of generality. He does not attest to any Plaintiff's alleged status as an account holder, and he does not purport to have personal knowledge of Plaintiffs' alleged accounts or the terms and conditions that governed them.[3]

In other words, Mr. Van Hise's declaration does nothing to cure Defendants' primary evidentiary deficiency on this motion: Defendants have still not produced any contracts between

---

[3] Although Mr. Van Hise confidently declares, "My name is Don Van Hise. I am the Area Retail Sales Manager at AT&T Mobility," it appears from the signature page and from information readily available on the internet that Mr. Van Hise may be more accurately characterized as an Area Retail Sales Manager for AT&T Mobility in Springfield, Missouri. See Asta Mem. at 2; Van Hise Decl. ¶¶ 1-4; see also Don Van Hise, LinkedIn (March 16, 2015, 12:16 PM), http://www.linkedin.com/pub/don-van-hise/76/472/31a. There is insufficient information in the record to determine the vastness of the "Area" Mr. Van Hise manages, but it is sufficient to note that his declaration lacks any statement of how he is qualified to attest to information concerning accounts opened in New York.

any Plaintiff and AT&T or any other admissible and probative evidence to establish that *these*
Plaintiffs entered into binding agreements to arbitrate with AT&T.

      The Second Circuit has declined to compel arbitration where the moving party submitted
far more compelling evidence of an agreement to arbitrate than Defendants have submitted here.
In Opals on Ice Lingerie v. Bodylines Inc., 320 F.3d 362, 371-72 (2d Cir. 2003), the Second
Circuit denied the motion to compel arbitration where both parties signed documents agreeing to
arbitration but never signed the same document containing a complete list of agreed upon
arbitration procedures.  Similarly, in Dreyfuss v. eTelecare Global Solutions-U.S. Inc., 349 F.
App'x 551 (2d Cir. 2009), the party seeking arbitration produced a copy of the first and last page
of a signed arbitration agreement but was unable to produce the pages in between.  Id. at 552-53.
Despite evidence that both parties manifested an intention to arbitrate, the Second Circuit held
that, "even if a contract did exist in this case, the agreement is not enforceable because . . . the
party seeking enforcement . . . has failed to prove its terms."  Id. at 555.

      Here, Defendants submit only sample agreements of non-parties; they have not produced
a single word of a contract between any Plaintiff and AT&T Wireless.  Moreover, the eighteen
sample arbitration agreements are not identical, and Defendants have not proved or even
identified which set of terms applies to any Plaintiff.  One sample contract provides that the costs
of arbitration will be divided equally between the customer and AT&T for all claims over $200
(J. Berman Decl. Ex. 11 at 25), whereas another limits the customer's arbitration fees to the
equivalent of a court filing fee for all claims under $75,000.  (J. Berman Decl. Ex. 13 at 13.)
Even if Defendants had demonstrated that Plaintiffs' alleged agreements to arbitrate existed,
such agreements would be unenforceable because Defendants have failed to prove their terms.
Dreyfuss, 349 F. App'x at 555.  The Court will not compel Plaintiffs to arbitrate this dispute

based on the sample agreements of non-parties.  "Arbitration is a matter of consent, not

coercion."  Volt Info. Scis. V. Bd. Of Trs. Of Leland Stanford Junior Univ., 489 U.S. 468, 479

(1989).  Defendants have not met their burden to establish that a binding arbitration agreement

was made between any of the Plaintiffs and AT&T.  Dreyfuss, 349 F. App'x at 554-55; Opals,

320 F.3d. at 371-72.

    As Judge Patterson recognized in Bernhart, there is an alternative basis for denying the

motion to compel arbitration.  Each of the eighteen sample agreements expressly provides that

"you or we may choose to pursue claims in court if the claims relate solely to the collection of

any debts you owe us." (J. Berman Ex. 4 at 35.)  In Bernhart, Judge Patterson held that this

clause allows Plaintiffs to bring this class action in a court of law because "Plaintiffs' action

relates solely to the Defendants' debt collection practices." (See Bernart Denial Order at 1-2.)

Defendants present no concrete basis for reconsidering Judge Patterson's conclusion, other than

to suggest that he did not give sufficient weight to the word "solely" and to cite eleven state and

federal cases that have enforced the arbitration clause in AT&T's Welcome Guides.  (Asta Mem.

at 4, 14.)  However, these cases are not on point—none of them involved debt collection and

none of them considered whether the exception for matters related to debt collection applied.

The Court finds no reason to depart from Judge Patterson's reading of the sample arbitration

clause and holds, as in Bernhart, that the exception for claims that "relate solely to the collection

of any debts [Plaintiffs] owe [AT&T]" would allow Plaintiffs to bring the present class action in

a court of law because Plaintiffs' claims relate solely to Defendants' collection of debts allegedly

owed to AT&T Wireless.

    Thus, for the same reasons in Bernhart, Defendants' motion to compel arbitration is

denied.

### B. Motion to Strike Plaintiffs' Class Allegations

Defendants contend that all Welcome Guides in 2001 and 2002 contained a class action

waiver and that anyone who entered into wireless contracts with AT&T during 2001 and 2002

would have waived his or her right to pursue their claims on a class or consolidated basis. (Asta

Mem. at 9; see Van Hise Decl. ¶ 4.)   Defendants propose that the appropriate solution is to strike

the class action allegations in the Complaint as to all putative class members who had accounts

with AT&T but not as to victims of "mistaken identity" or "identity theft" who never had

accounts with AT&T.  (Asta Mem. at 3.)

"Motions to strike are generally looked upon with disfavor." Ironforge.com v. Paychex,

Inc., 747 F. Supp. 2d 384, 404 (W.D.N.Y. 2010) (citation and internal quotation marks omitted).

"A motion to strike class allegations . . . is even more disfavored because it requires a reviewing

court to preemptively terminate the class aspects of . . . litigation, solely on the basis of what is

alleged in the complaint and before plaintiffs are permitted to complete the discovery to which

they would otherwise be entitled on questions relevant to class certification." Id. (citation and

internal quotation marks omitted); accord Chen-Oster v. Goldman, Sachs & Co., 877 F. Supp. 2d

113, 117 (S.D.N.Y. 2012); Calibuso v. Bank of Am. Corp., 893 F. Supp. 2d 374, 388 (E.D.N.Y.

2012); Chenensky v. New York Life Ins. Co., No. 07 Civ. 11504 (WHP), 2011 WL 1795305, at

*1 (S.D.N.Y. Apr. 27, 2011).  In order to grant Defendants' motion at this stage, Defendants

would have to demonstrate from the face of the Complaint that it would be impossible to certify

the alleged class regardless of the facts Plaintiffs may be able to obtain during discovery.  Bryant

v. Food Lion, Inc., 774 F. Supp. 1484, 1495 (D.S.C. 1991).

Defendants contend that, by including class members who had accounts with AT&T, "on

its face, Plaintiffs have defined a class that contains individuals who are barred from

participating in class actions." (Asta Reply at 4.)  This hypothetical fails to satisfy Defendants'
burden for two reasons.  First, it assumes that Defendants can prove Plaintiffs not only had
accounts with AT&T, but also that they waived their class action rights and established a
"meeting of the minds on all essential terms" of any such waiver.  Opals on Ice Lingerie v. Body
Lines Inc., 320 F.3d 362, 372 (2d Cir. 2003) ("Under New York contract law . . . [i]f there is no
meeting of the minds on all essential terms, there is no contract.  This is because an enforceable
contract requires mutual assent to the essential terms and conditions thereof.")  Given Plaintiffs'
allegation that Defendants never had possession of the terms and conditions between Plaintiffs
and AT&T, (Compl. ¶¶ 3; 40-42; 77-79; 120-21; 124-25), Defendants' continued failure to
produce contracts between any plaintiff and AT&T, and Defendants' admission that all contracts
during the relevant period have been destroyed, (Asta Mem. at 2), it is certainly possible that
Defendants will be unable to prove that Plaintiffs—even those who do not deny having accounts
with AT&T—waived their class action rights.

Second, even if Defendants can ultimately prove that individual Plaintiffs waived their
class action rights, the mere possibility of individualized defenses will not preclude certification
of a class where common questions of law or fact predominate over questions affecting
individual class members.  See Sykes v. Mel S. Harris & Associates LLC, No. 13-2742-CV,
2015 WL 525904, at *11-14 (2d Cir. Feb. 10, 2015) (affirming certification of class of those
injured by defendant debt collector's scheme of fraudulently procuring default judgments,
despite existence of individual issues and defenses).  Plaintiffs allege that Defendants had
insufficient documentation to prove a claim against any Plaintiff and obtained default judgments
against them on the basis of mass-generated fraudulent affidavits—this includes class members
who had accounts with AT&T and those who did not.  (Compl. ¶¶ 161-63.)  It is premature to

undertake a complete analysis of the predominance of common issues before class certification is properly before the Court, but Defendants have failed to show that the class fails as a matter of law. The motion to strike class action allegations is denied.

### C.  Motion to Dismiss Plaintiffs' RICO Claims

Defendant Asta moves to dismiss Plaintiffs' RICO claims on three separate grounds. Defendants contend that (1) the alleged "litigation misconduct" is insufficient, as a matter of law, to establish predicate acts for RICO liability;[4] (2) Plaintiffs have failed to plead RICO allegations with particularity as to Defendant Asta; and (3) Plaintiffs have failed adequately to plead the existence of an enterprise. Each argument is addressed in turn.

### i.  Plaintiffs Sufficiently Plead Predicate Acts For RICO Liability

Defendants first contend that the sole basis for Plaintiffs' RICO claim is that Defendants committed mail and wire fraud by filing fraudulent court documents and sending them through the mail. Defendants maintain that these alleged acts of litigation misconduct are insufficient, as a matter of law, to constitute "predicate acts" under RICO.

To establish a civil RICO violation, a plaintiff must show that he was injured by defendants' "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985). At least two acts of racketeering activity within a span of ten years are required to establish a "pattern." 18 U.S.C. § 1961(5).

A complaint alleging mail and wire fraud as the predicate acts of a RICO claim must show: "(1) the existence of a scheme to defraud; (2) defendant's knowing or intentional participation in the scheme; and (3) the use of interstate mails or transmission facilities in furtherance of the scheme." S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp., 84 F.3d 629,

---

[4] Pessler joins in this argument. (Pressler Mem. at 5-9.)

633 (2d Cir. 1996). "The gravamen of the [mail fraud] offense is the scheme to defraud, and any mailing that is incident to an essential part of the scheme satisfies the mailing element, even if the mailing itself contains no false information," and even if no one relied on any misrepresentation. Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 647, 648-49 (2008) (citation and internal quotation marks omitted).

As described above, Plaintiffs have alleged a broad scheme to defraud tens of thousands of New Yorkers by fraudulently obtaining default judgments against them in state court. In furtherance of the scheme, Defendants are alleged to have used the interstate mails and wires on numerous occasions, including but not limited to mailing summonses, complaints, judgment notices, affirmations in opposition to orders to show cause, notices of garnishment and at least one letter refusing to stop garnishing wages. (Compl. ¶¶ 374-77.) Although use of the mails in furtherance of a scheme to defraud is sufficient to state a claim under RICO, Plaintiffs allege that many of the mailings themselves contained false or misleading representations, including fraudulent affidavits of facts, fraudulent affidavits of service, and falsely "verified" complaints. (Id. ¶¶ 372-74.)

Notwithstanding the fact that these allegations appear to establish the elements of a RICO claim, Defendants urge the Court to adopt a bright-line rule that mail and wire fraud committed in the course of litigation activities cannot, as matter of law, constitute predicate acts for RICO purposes. Defendants do not cite any controlling authority for this proposition, and the Court has not found any.[5] To the contrary, the Second Circuit and courts in this district have allowed RICO claims to proceed where the alleged predicate acts involved litigation activities. See, e.g.,

---

[5] For support, Defendants rely on reasoning applied in an unpublished opinion in the Western District of New York. Snyder v. United States Equities Corp., 2014 WL 317189, at *8-9 (W.D.N.Y. Jan. 27, 2014).

United States v. Eisen, 974 F.2d 246, 253-54 (2d Cir. 1992) (perjurious pleadings and pretrial submissions considered mail fraud predicates for RICO claim); Sykes v. Mel Harris & Associates, LLC, 757 F. Supp. 2d 413, 425 (S.D.N.Y. 2010) (denying motion to dismiss RICO claims where predicate acts involved filing fraudulent affidavits with court). Indeed, the Second Circuit recently acknowledged that the very predicate acts alleged here—false affidavits filed with the court—were "false or fraudulent . . . representations" providing "independent bases for liability" under RICO. Sykes v. Mel S. Harris & Associates LLC, No. 13-2742-CV, 2015 WL 525904, at *13 (2d Cir. Feb. 10, 2015).

Given this precedent, the Court declines to fashion a judge-made exception to RICO liability for litigation activities. "RICO is to be read broadly" and should be "liberally construed to effectuate its remedial purposes." Sedima, 473 U.S. at 497-98 (citation and internal quotation marks omitted). Courts are not permitted to "carve out" exceptions to RICO where a "fraudulent scheme falls within the scope of the federal mail fraud statute and other elements of RICO are established." Eisen, 974 F.2d at 254. Plaintiffs have adequately alleged mail and wire fraud as predicate acts supporting a RICO claim, and thus this prong of Defendants' motion to dismiss is denied.

### ii. Plaintiffs Plead RICO with Particularity as to Defendants Asta and Stern

Under Rule 9(b), Plaintiffs are required to plead RICO claims with particularity. Fed. R. Civ. P. 9(b). In cases where the plaintiff alleges the mails and wires were used "in furtherance of a master plan to defraud," Rule 9(b) is satisfied if the complaint contains "a detailed description of the underlying scheme and the connection therewith of the mail and/or wire communications." In re Sumitomo Cooper Litig., 995 F. Supp. 451, 456 (S.D.N.Y. 1998). "Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each

defendant of the nature of his alleged participation in the fraud." Angermeir v. Cohen, No. 12

Civ. 55 (KMK), 2014 WL 1613016, at *8 (S.D.N.Y. Mar. 27, 2014) (quoting DiVittorio v.

Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir.1987)).

      Rule 9(b) does not require Plaintiffs to allege a "specific connection between fraudulent

representations . . . and particular defendants . . . where . . . defendants are insiders or affiliates

participating in the [allegedly fraudulent conduct] in question." DiVittorio v. Equidyne

Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir.1987). However, "a bare allegation of an

individual defendant's affiliation with entities allegedly committing fraudulent acts is not enough

to satisfy Rule 9(b)." Angermeir, 2014 WL 1613016, at *8. "Rule 9(b) requires that the

plaintiffs allege facts specifying each defendant's contribution to the fraud." DeFazio v. Wallis,

No. 05 Civ. 5712, 2006 WL 4005577, at *2 (E.D.N.Y. Dec. 9, 2006).

      Asta asserts that Plaintiffs plead "a litany" of allegedly fraudulent misconduct by

Pressler, but plead nothing about Asta other than that Asta and Pressler developed and

implemented Pressler's litigation strategy. (Asta Mem. at 18-19; Compl. ¶ 48.) According to

Asta, the other acts they allegedly committed—buying debt, retaining counsel and obtaining

judgments—were innocuous, ordinary and proper conduct that Plaintiffs imbue with a "sinister

cast" by including them alongside the allegations against Pressler. (Asta Mem. at 20.) Asta adds

that there are no allegations against Gary Stern, CEO of Asta, other than that actions were taken

"at his direction." (Asta Mem. at 19 n.12.) Asta maintains that this "group pleading" is

insufficient as a matter of law to state a claim against Asta under RICO. (Id. at 19.)

      The Complaint contains numerous specific allegations of Asta's involvement in the

scheme underlying the RICO claim, and Asta's actions, as alleged, are hardly "innocuous."

Plaintiffs allege that Asta devised and executed the scheme (Compl. ¶ 2), purchased the debts

without the documentation required to substantiate them (Id. ¶¶ 34-42), retained Pressler to collect on the debts (Id. ¶¶ 47-50), helped Pressler devise a litigation strategy (Id.), served as plaintiff in the suits Pressler brought (Id. ¶¶ 52, 54, 56, 68), and furnished Pressler with fraudulent affidavits—signed by Asta's employees—for use in the litigation (Id. ¶¶ 114-22). Regarding Mr. Stern, Plaintiffs allege that the legal scheme was his idea and that he personally "orchestrated, supervised, and monitored" it.  (Id. ¶¶ 3, 43-44, 359-60, 365.)  These allegations sufficiently "inform [Asta and Stern] of the nature of [their] alleged participation in the fraud." Angermeir, 2014 WL 1613016, at *8.

### iii.    Plaintiffs Plead the Existence of an Enterprise

Asta Defendants contend that Plaintiffs have failed adequately to plead the existence of an enterprise.  A RICO enterprise is broadly defined as "a group of persons associated together for a common purpose of engaging in a course of conduct," United States v. Turkette, 452 U.S. 576, 583 (1981), and its existence is "proven 'by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'" First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 173 (2d Cir. 2004) (quoting Turkette, 452 U.S. at 583).  Here, Plaintiffs allege an association-in-fact enterprise.  (Compl. ¶ 359.)  An association-in-fact enterprise must have, at a minimum, the following structural features: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."  Boyle v. U.S., 556 U.S. 938, 946 (2009).

Plaintiffs have sufficiently pleaded the existence of a RICO enterprise.  The Complaint alleges the Defendants were associated together for the common purpose of securing default judgments in debt collection actions through fraudulent means.  The Complaint details the

actions of each of the Defendants in furtherance of the scheme and describes their relationships to each other.  Plaintiffs allege that Asta, at Stern's direction, conceived the "legal strategy" underlying the alleged scheme and directed the purchase of the debts from AT&T.  (Compl. ¶¶ 2, 3, 34-35.)  Palisades Collection, a subsidiary of Asta, is the owner of the debts and commenced fraudulent debt collection actions by and through Pressler & Pressler, a law firm retained by Asta.  (Id. ¶¶ 2, 3, 12, 17, 47.)  Unlike the pleadings in the cases cited by Asta, e.g., Lubin v. Dubin, 2014 WL 794313, at *7 (E.D.N.Y. Feb. 24, 2014) (finding that plaintiffs "merely lump[ed] all of [defendant's] associates, family members and corporate entities together in an attempt to manufacture an enterprise"), Plaintiffs' pleading is far from conclusory.  Plaintiffs sufficiently allege an enterprise comprised of a coordinated group of individuals and organizations, each of which played specifically-alleged roles in a fraudulent scheme that lasted over eight years.

### D.  Motion to Dismiss the GBL Claim for Failure to State a Cause of Action

Pressler Defendants move to dismiss Count IV for failure to state a cause of action under New York General Business Law § 349.  Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."  N.Y. Gen. Bus. L. § 349(a).  "To maintain a cause of action under § 349, a plaintiff must show: (1) that the defendant's conduct is 'consumer oriented'; (2) that the defendant is engaged in a 'deceptive act or practice'; and (3) that the plaintiff was injured by this practice."  Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 64 (2d Cir.2010) (citation omitted).

Courts construe the consumer-oriented requirement liberally.  New York v. Feldman, 210 F. Supp. 2d 294, 301 (S.D.N.Y. 2002).  The requirement "may be satisfied by showing that the conduct at issue 'potentially affect[s] similarly situated consumers.'"  Wilson, 625 F.3d at 64

18

(alteration in original) (quoting Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 27, 647 N.E.2d 741, 745 (1995)). "A defendant engages in 'consumer-oriented' activity if his actions cause any 'consumer injury or harm to the public interest.'" Feldman, 210 F. Supp. 2d at 301 (quoting Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256, 264 (2d Cir. 1995)).

Defendants argue that the alleged fraudulent activities were not "consumer-oriented" in that they were directed at the court and at Plaintiffs' employers, rather than at the consumers themselves. (See, e.g., Pressler Mem. at 15-16 ("The only allegedly deceptive statements that resulted in any loss for Plaintiff Millien were directed at the court (i.e. complaint, affidavit of fact and affidavit of service) or his employer (i.e. execution notice).").) This parsing of the statutory language is unavailing. The Complaint alleges that Defendants brought fraudulent debt collection lawsuits against thousands of New York consumers. (Compl. ¶¶ 51-60.) Passing fraudulent communications through the court en route to consumers does not cleanse Defendants of liability under § 349. See, e.g., Sykes v. Mel Harris & Associates, LLC, 757 F. Supp. 2d 413, 428 (S.D.N.Y. 2010); Midland Funding, LLC v. Giraldo, 39 Misc. 3d 936, 961 N.Y.S.2d 743, 752 (Dist. Ct. Nassau County 2013) (finding that "'routine filing' of assigned debt lawsuits by plaintiff 'despite a lack of crucial, legally admissible information' or 'sufficient inquiry' into whether the claims are meritorious" falls within scope of GBL). Defendants' deceptive conduct is consumer-oriented and harmful to the public interest in that consumers are forced to respond to the fraudulent lawsuits or else face the penalty of wrongful default judgments, garnished wages, restrained bank accounts and impaired credit opportunities.

Plaintiffs have sufficiently alleged deceptive, consumer-oriented conduct that harms Plaintiffs and the public interest in violation of the statute.  This prong of Defendants' motion to dismiss is denied.

### E.  Motion to Dismiss Claims Against the Individual Defendants

Pressler moves to dismiss the GBL and FDCPA claims as to the individual Defendant employees of Pressler.

#### i.   GBL Claims

Pressler contends the GBL claim should be dismissed as to the individual defendant employees of Pressler because "employees of a law firm cannot be held liable for violations of Gen. Bus. Law § 349 by their employer."  (Pressler Mem. at 17.)

Pressler misconstrues the nature of Plaintiffs' claim. Plaintiffs are not holding individual defendants liable by virtue of their employment; rather, their individual liability arises from their own conduct that violates the GBL.  A corporate employee or officer who himself "participates in a tort, even if it is in the course of his duties, may be held individually responsible." Nat'l Survival Game, Inc. v. Skirmish, U.S.A., Inc., 603 F. Supp. 339, 341 (S.D.N.Y. 1985).

This Court has already found that the Complaint sufficiently states a claim under § 349. Thus, the inquiry is whether Plaintiffs have sufficiently pleaded the individual Defendants' personal involvement in prohibited conduct.  Plaintiffs allege that Defendants Franklin and Wang verified and filed complaints against class members without sufficient review.  (Compl. ¶¶ 175-81, 239-44.)  For example, Franklin is alleged to have falsely stated, on pain of perjury, that he was "in possession of the salient papers in connection with the action" against Mayfield, when in fact he did not have access to Mayfield's alleged account agreement, terms and conditions, account application, signed contract, original billing statements, payment records or dispute

history at the time he verified the complaint.  (Id. ¶¶ 175-81.)  Wang is alleged to have made

identical misrepresentations in the action against Millien.  (Id. ¶¶ 239-44.)  Plaintiffs also allege

that Franklin signed and submitted an application for default judgment supported by fraudulent

affidavits.  (Id. ¶¶ 199-201.)  When alleged debtors sought to vacate improperly obtained default

judgments, Plaintiffs allege that Defendants filed fraudulent oppositions to orders to show cause

supported by false affirmations signed by Defendant Zipkin.  (Id. ¶¶ 141, 214-20, 278-84.)

Those who succeeded in vacating the judgments against them were met with further harassing

litigation practices, such as legally improper interrogatories and notices to admit facts reasonably

known to be in dispute at trial, signed by Zipkin or Stiller.  (Id. ¶¶ 145-48, 151, 222-26, 286-90.)

Plaintiffs have sufficiently pleaded the individual Defendants' personal participation in

deceptive business practices prohibited by the GBL.  Defendants' motion to dismiss the GBL

claims is denied.

### ii. FDCPA Claims

Pressler also moves to dismiss the FDCPA claims as to the Individual Defendants.  The

FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors."

15 U.S.C.A. § 1692(e).  The FDCPA prohibits a wide range of abusive actions, including "false

or misleading representations . . . in connection with the collection of any debt," "us[ing] unfair

or unconscionable means to collect or attempt to collect any debt," and engaging in "any conduct

the natural consequence of which is to harass, oppress, or abuse any person."  15 U.S.C. §§

1692(d), 1692(e), 1692(f).

Pressler contends that the "question of liability of employees of a debt collector for

violations of the FDCPA has not been answered in the Second Circuit."  (Pressler Mem. at 17-

18).  Once again, Defendants either misread the law or Plaintiffs' allegations that Individual

Defendants personally participated in activities prohibited by the FDCPA. The FDCPA explicitly extends liability to any "person" who violates the Act. 15 U.S.C. § 1692a(6). As with liability under the GBL, courts within this Circuit have routinely found that employees of debt collectors can be held liable where they personally participate in conduct that violates the FDCPA. See Clomon v. Jackson, 988 F.2d 1314, 1316, 1323 (2d Cir. 1993) (holding that an attorney employed part-time as general counsel of a debt collecting agency was liable for his own actions in violation of the FDCPA); see also Krapf v. Prof'l Collection Servs., Inc., 525 F. Supp. 2d 324, 327-28 (E.D.N.Y. 2007) (finding complaint sufficiently stated claim for individual liability where debt collection agency employees "personally engaged" in conduct prohibited by the FDCPA); Ohlson v. Cadle Co., Inc., No. 04 Civ. 3418, 2006 WL 721505 (E.D.N.Y. Mar. 21, 2006) (employees of debt collecting agency may be liable "where they have affirmatively acted").

As discussed previously, the Complaint alleges in detail the personal involvement of the individual defendants in the alleged scheme to collect debts through fraudulent means. The FDCPA claims against the individual defendants are proper and the motion to dismiss is denied.

### F. Motion to Dismiss Counts II, III, IV and V as to Plaintiff Mayfield for Lack of Adequately Pleaded Damages

Pressler seeks to dismiss Plaintiffs' RICO, GBL and New York Judiciary Law claims as to Plaintiff Mayfield on the basis that Plaintiffs failed adequately to plead damages.

The Complaint includes various allegations of specific injuries sustained by Plaintiff Mayfield. Mayfield first learned of the judgment against her in 2013 when her employer received an order directing it to withhold Mayfield's wages. (Compl. ¶ 169.) At around the same time, Mayfield was denied a mortgage due to her negative credit history, which included the Palisades Collection judgment that had stained her credit report, unbeknownst to her, since

2007. (Id. ¶ 169.)  Mayfield also incurred costs and suffered stress and emotional distress defending the fraudulent lawsuit.  (Id. ¶ 232.)  In order to have the judgment vacated and the lawsuit dismissed, Mayfield had to travel to the courthouse for appearances and filings on multiple occasions over the course of five months.  (Id. ¶¶ 229-30.)  Each time, she missed work, expended personal days and incurred transportation costs.  (Id. ¶¶ 229-30.)

These injuries constitute "[i]njury to business or property" sufficient to sustain a RICO claim. 18 U.S.C. § 1962(c); see, e.g., Sykes v. Mel Harris & Associates, LLC, 757 F. Supp. 2d 413, 427-28 (S.D.N.Y. 2010) (costs incurred to "challenge . . . default judgments"); Angermeir v. Cohen, 2014 WL 1613016, at *13 (S.D.N.Y. Mar. 27, 2014) (legal fees in defending fraudulent lawsuits); Curley v. Cumberland Farms Dairy, Inc., 728 F. Supp. 1123, 1140 (D.N.J. 1989) (travel expenses); Cnty. of Ulster, N.Y. v. Ulloa, No. 10 Civ. 467, 2011 WL 777962, at *1, 5 (N.D.N.Y. March 1, 2011) (negative impact on credit history resulting in denial of specific credit opportunities).[6]

Plaintiffs' injuries are also sufficient under the GBL.  See, e.g., Midland Funding, LLC v. Giraldo, 39 Misc. 3d 936, 950, 961 N.Y.S.2d 743 (Dist. Ct. Nassau County 2013) (costs reasonably incurred defending deceptive lawsuits are "more than adequate" to plead damages under § 349); Fritz v. Resurgent Capital Services, LP, 995 F. Supp. 2d 163, 174 (E.D.N.Y. 2013) ("time spent" defending deceptive lawsuits sufficient under GBL § 349).

---

[6] Defendants only move to dismiss the claims as to Plaintiff Mayfield, however it should be noted that Plaintiffs Millien and Porter have alleged similar harms, as well as pecuniary harm in the form of garnished wages, which is sufficient to plead "injury to . . . property" under RICO. See Clark v. Conahan, 737 F. Supp. 2d 239, 255 (M.D. Pa. 2010) (wage garnishment constitutes injury cognizable under RICO).

Finally, Plaintiffs have adequately pleaded damages under the New York Judiciary Law, which grants a cause of action to any party "injured" by deceptive practices. N.Y. Jud. Law § 487; Amalfitano v. Rosenberg, 12 N.Y.3d 8, 14 (2009) (costs of defending deceptive lawsuit adequate to allege damages).

Plaintiffs have adequately pleaded damages as to all counts. Defendants' motion to dismiss on this ground is denied.

## IV.   CONCLUSION

For the foregoing reasons, all of Defendants' motions [ECF Nos. 29-36] are denied. Counsel shall appear for a conference on April 14, 2015 at 10:00 AM.


SO ORDERED.

Dated: New York, New York
March 30, 2015


_Loretta A. Preska_

Loretta A. Preska

Chief U.S.D.J.


**Copies of this opinion and order were sent to:**

**Danielle Feldman Tarantolo**
New York Legal Assistance Group
450 W. 33rd St. 11th Fl.
New York, NY 10001
(212)-613-5000
Fax: (212)-714-7589
Email: dtarantolo@nylag.org

**Diane E. Lifton**
Hughes Hubbard & Reed LLP (NY)
One Battery Park Plaza
New York, NY 10004
(212) 837-6860
Fax: (212) 299-6860
Email: lifton@Hugheshubbard.com

**Jane Greengold Stevens**
New York Legal Assistance Group
450 West 33rd Street
11th Floor
New York, NY 10001
(212) 613-5031
Fax: (212) 750-0820
Email: jstevens@nylag.org

**Julia Grossman Russell**
New York Legal Assistance Group
450 West 33rd Street
11th Floor
New York, NY 10001
(212)-613-5000
Fax: (212)-750-0820
Email: jrussell@nylag.org

**Meaghan Christina Gragg**
Hughes Hubbard & Reed LLP (NY)
One Battery Park Plaza
New York, NY 10004
(212)-837-6101
Fax: (212)-299-6101
Email: gragg@hugheshubbard.com

**Shannon Frank Green**
Hughes Hubbard & Reed LLP
350 South Grand Avenue, 36th Floor
Los Angeles, CA 90071
(212)-837-6930
Fax: (212)-299-6930
Email: frank@hugheshubbard.com

**Joshua Alexander Berman**
Troutman Sanders LLP (NYC)
405 Lexington Avenue
New York, NY 10174
212-704-6000
Fax: 212-704-6288
Email: joshua.berman@troutmansanders.com

**Eric L. Unis**
Troutman Sanders LLP (NYC)
405 Lexington Avenue
New York, NY 10174
(212) 704-6000
Fax: 212 704 6288
Email: eric.unis@troutmansanders.com

**Karen F. Lederer**
Troutman Sanders LLP (NYC)
405 Lexington Avenue
New York, NY 10174
212-704-6000
Fax: 212 704 6288
Email: Karen.lederer@troutmansanders.com

**Kevin Patrick Wallace**
Troutman Sanders LLP (NYC)
405 Lexington Avenue
New York, NY 10174
(212)-704-6208
Fax: (212)-704-8396
Email: kevin.wallace@troutmansanders.com

**Stephen George Rinehart**
Troutman Sanders LLP (NYC)
405 Lexington Avenue
New York, NY 10174
212-704-6305
Fax: 212-704-6288
Email: Stephen.rinehart@troutmansanders.com

**Glenn M. Fjermedal**
Davidson Fink LLP
28 East Main Street
Suite 1700
Rochester, NY 14614
(585) 546-6448
Fax: (585) 758-5103
Email: gfjermedal@davidsonfink.com

**Mitchell Lee Williamson**
Pressler and Pressler (NJ)
7 Entin Road
Parsippany, NJ 07054
(973)-753-5100
Fax: (845)-818-3829
Email: mwilliamson@pressler-pressler.com

**Curtis Alan Johnson**
Davidson, Fink, Cook, Kelly & Galbraith, LLP
28 East Main Street
Suite 1700
Rochester, NY 14614-1990
(585) 546-6448
Fax: (585) 546-8125
Email: curtisalanjohnson@gmail.com